649 So.2d 1100 (1995)
STATE of Louisiana
v.
George SORAPARU.
No. 93-KA-1636.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1995.
*1101 Harry F. Connick, Dist. Atty., Karen E. Godail, Philip A. Spence, Asst. Attys. Gen., New Orleans, for plaintiff/appellee.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant/appellant.
Before JONES, WALTZER and LANDRIEU, JJ.
LANDRIEU, Judge.
George R. Soraparu was charged by grand jury indictment on March 11, 1993, with second degree murder in violation of La.Rev. Stat.Ann. § 14:30.1 (West Supp.1994). Following the trial on April 20, 1993, a twelve-member jury found him guilty of manslaughter, a lesser included offense. He was sentenced on April 27, 1993, to serve forty (40) years at hard labor. On appeal defense counsel raises two assignments of error and the defendant raises two pro se assignments of error for the reversal of his conviction and sentence. We affirm the conviction, vacate the sentence and remand for resentencing.

FACTS
At trial NOPD Officer Anthony Joseph Haywood, Jr., testified that on January 6, 1993, at about 1:19 A.M. when he responded to a call from 1000 Desire Street, he found Jimmy Watson face down in the middle of the street bleeding from a gunshot wound in his head. The officer tried unsuccessfully to find witnesses; however, he found a man who said that the victim had been arguing earlier with Darnell Williams.
NOPD Detective Norman McCord testified that he interviewed Darnell Jones, who is also known as Darnell Williams, and learned that the defendant was a suspect in the case.
NOPD Officer Larry Singleton arrested the defendant on January 6, 1993, after he had received information that the defendant was being chased by a group of people around the 1000 block of Piety Street. When Officer Singleton arrived there, he stopped *1102 the defendant who told Singleton that his name was Roy Nelson. The crowd behind him identified the defendant as George Soraparu.
Ronnie Lloyd, a sixteen-year-old resident of 1013 Desire Street, testified that he and his family were on his front porch about 1:00 a.m. on January 6, 1993, when he noticed the victim, whom he knew as "Poochie," coming from the store. Lloyd also saw the defendant, whom he knew as Roy, on the street; then Lloyd heard Roy and Poochie arguing, and at one point, Roy turned to Lloyd and his family saying, "Y'all go inside." Lloyd stayed on the porch, and he saw Roy shoot Poochie in the head. Roy then said "Now, it's over," walked down the street, and entered the house on the corner. The next day Lloyd went to the police station to report what he had seen.
Dr. Paul McGarry, the forensic pathologist who autopsied Jimmy Watson, testified that Watson died of a single gunshot wound to the left side of the head.
Victoria Robinson of 1037 Desire Street testified for the defense that on the night in question, she heard a gunshot, jumped out of bed, and saw "somebody laying in the street." She said she saw Ronnie Lloyd's mother on her porch but that she did not see Lloyd there. Robinson claimed that Ronnie Lloyd told her he was testifying against Roy because he was getting paid to do so. Robinson also stated that Roy had come by her house to use the telephone about 10:30 p.m. January 5, 1993, and then left for his girlfriend's house.
Hakeem Richards and Nicole Richards, cousins, of 2504 Jonquil Street stated that the defendant was at their house at the time the victim was killed. Nicole Richards, Roy's girlfriend, stated that Roy arrived at 11:00 p.m. and that they all watched television until 1:45 a.m.

DISCUSSION

ERRORS PATENT
Our review of the record reveals no errors patent.

PRO SE ASSIGNMENTS OF ERROR NOS. 1 & 2
In these pro se assignments of error,[1] the defendant contends that (1) it was error for him to be arrested without a warrant or probable cause and (2) there was insufficient evidence to sustain his conviction beyond a reasonable doubt. Noting that these pro se assignments of error were never briefed, we, nonetheless, have considered these arguments and find them to be without merit.

ASSIGNMENT OF ERROR NO. 1
Defense counsel argues that the trial court erred in admitting hearsay testimony which bolstered the credibility of Ronnie Lloyd, the State's only eye witness. Specifically, the defendant alleges that the State, on redirect of Detective McCord, had the detective testify that Ronnie Lloyd's statement corroborated Darnell Jones' statement.
At trial NOPD Detective Norman McCord testified he became involved in the investigation of this crime when two officers arrived at his office with Darnell Jones, who is also known as Darnell Williams. From his interview with Jones, McCord learned that the defendant was involved in the crime. At that point Ronnie Lloyd came into the office and McCord took a statement from him; Lloyd also implicated the defendant. On cross-examination, the defense attorney asked Detective McCord if Officer Haywood had told him that Jones and the defendant had been in a fight moments before the murder. McCord responded that Jones had told him of that fight.
On redirect examination, when the assistant district attorney asked McCord how he learned of an argument between the defendant and Jones, McCord answered, "Jones advised us in his statement." The State then asked if Jones was considered a suspect in the case, and the detective said that Lloyd then came in and corroborated Jones' statement. McCord did not finish his statement *1103 because the defense objected, and the trial court sustained the objection.
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La.Code Evid.Ann. art. 801(C) (West 1994). State v. Wille, 559 So.2d 1321 (La.1990); State v. Preston, 623 So.2d 938 (La.App. 4th Cir.1993).
If a reviewing court is able to determine beyond a reasonable doubt that the improperly admitted hearsay did not contribute to the verdict, then the error is deemed harmless. State v. Banks, 439 So.2d 407 (La.1983).
The defense asserts that the detective's testimony about Jones was offered to prove that the defendant committed the offense. He states that Jones' statement was introduced; however, it was not. On direct examination, the detective testified that as a result of his interview with Jones, he developed a suspect in the case. A police officer may refer to a statement made to him by others in order to explain the sequence of events leading to the arrest of the defendant. State v. Tucker, 405 So.2d 506 (La.1981); State v. Lard, 459 So.2d 1189 (La.App. 4th Cir.1984), writ denied 464 So.2d 1376 (La. 1985).
Although this court has held as above, the Louisiana Supreme Court in State v. Hearold, 603 So.2d 731, 737 (La.1992), significantly limited the admissible testimony police officers may give to explain actions taken during investigations. In Hearold, where the officers testified at length about the defendant's criminal activity over a period of time, the court stated:
The fact that an officer acted on information obtained from an informant may be relevant to explain his conduct, but may not be used as a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule.
In the instant case, the substance of the statement (Lloyd's allegation corroborated Jones' account) does not have the same significance as the statement in the Hearold case. Here, the trial court allowed evidence that a conversation took place between the officer and Jones but refused to allow statements which were made during the conversationexcept for the facts that Jones gave information concerning the defendant and that Jones himself had fought with the victim moments before the homicide. The trial court did not permit the witness to testify concerning out-of-court statements to prove the truth of the matter asserted, i.e., what Jones told the officer.
The defense next argues that Lloyd's testimony was verified by Jones' statement. However, all the juryand this Courtcan know of Jones' statement is that Jones implicated the defendant in the shooting and also implicated himself. Thus, Jones' statement cannot be seen as convincing the jury of the defendant's guilt. While the detective suggests that Jones and Lloyd named the defendant as the offender, Lloyd did not place Jones at the scene of the shooting. Therefore, Jones would not have been an eye witness and could not have given a first-hand account of the incident.
The defense cites State v. Arbuthnot, 367 So.2d 296 (La.1979), for the proposition that an eye witness to a crime who identifies a suspect yet who does not testify at trial may not be quoted by a police officer at trial. In Arbuthnot, the Supreme Court reversed co-defendant Williams' conviction because it found that clearly inadmissible hearsay evidence had been admitted. Arbuthnot is distinguishable from the case at bar in that Jones was not an eye witness, and there is no evidence that Jones identified the defendant as the offender.
The defense also cites State v. Phillips, 471 So.2d 319 (La.App. 4th Cir.1985), where a police officer testified in rebuttal that an employee of a car shop told him that the defendant's car was released from the shop before the offense when the defendant had just testified that his car was in the shop on the date of the crime. This Court in reversing the conviction noted that the officer's hearsay testimony directly contradicted the defendant's argument that this was a case of mistaken identification. Unlike Phillips, the *1104 defendant's alibi in the instant casethat he was at his friends' housewas contradicted by testimony of the only eye witness to the crime, not by Jones' statement. Ronnie Lloyd stated that he saw the defendant shoot the victim. Thus, any evidence that a third party implicated the defendant in the shooting is cumulative evidence and in fact not as convincing when compared to the evidence of the eye witness. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
The defense next argues that the trial court erred in imposing an excessive sentence. The defendant was sentenced to serve forty years at hard labor, the maximum sentence for manslaughter under La.Rev. Stat.Ann. § 14:31 (West Supp.1994). He argues that under the sentencing guidelines he should have received a sentence of 60 to 90 months.
Article I, § 20 of the Louisiana Constitution (West 1977) provides that "[n]o law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is considered excessive and unconstitutional if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial court adequately complied with the sentencing guidelines set forth in La.Code Crim.Proc.Ann. art. 894.1 (West 1984) and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
In State v. Smith, 93-0402 (La. 7/5/94); 639 So.2d 237, 240, the Louisiana Supreme Court held that:
(1) while a trial judge must consider the Guidelines, he has complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the record the consideration taken into account and the factual basis for his imposition of that sentence, La.Code Cr.P. art. 894.1; and (2) where the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.
In imposing the sentence, the trial court considered the guidelines and decided not to follow them because this crime of manslaughter was a "very cold and deliberate act" and "in all essence" a crime of second degree murder. The trial court concluded that the defendant's conduct was not adequately described by the offense. While reasons were given for the sentence imposed, no mitigating circumstances are mentioned and no specific facts about the defendant are given.[2]
The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). A sentence should not be set aside in the absence of a manifest abuse of discretion. State v. Washington, 414 So.2d 313 (La.1982). Further, each case must be decided on its own facts. State v. Humphrey, 445 So.2d 1155 (La.1984).
After establishing there is adequate compliance with Article 894.1, a reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offenses so charged. State v. Cornelius, 539 So.2d 919 (La.App. 4th Cir.1989); State v. Guajardo, 428 So.2d 468, 473 (La.1983).
*1105 In the instant case, the defendant, as a first felony offender, received the maximum sentence of 40 years at hard labor. Maximum sentences for first offenders convicted of manslaughter have been upheld in State v. Berryhill, 562 So.2d 1105 (La.App. 4th Cir. 1990); State v. Jones, 593 So.2d 1301 (La. App. 1st Cir.1991), writ denied, 620 So.2d 868 (La.1993); and State v. Dearborne, 571 So.2d 828 (La.App. 3rd Cir.1990), writ denied, 576 So.2d 29 (La.1991). In each of these cases as in the case at barthe trial court commented that the evidence supported a verdict of second degree murder.
However, there is a difference between the maximum sentences imposed in Berryhill, Jones, and Dearborne and the sentence imposed in the instant case because in 1992 the Louisiana legislature raised the maximum sentence for manslaughter from twenty-one years to forty years. Thus, this defendant received almost twice the term of imprisonment as the defendants in the other cases cited.
In State v. Coleman, 94-0666 (La.App. 4th Cir. 12/15/94); 647 So.2d 1355, where the maximum sentence was also 40 years, this Court recently affirmed a sentence of 15 years for manslaughter imposed on a first offender under almost identical circumstances. There too the trial court found that the defendant "intentionally and coldly murdered Benjamin Franklin," was "very fortunate not to have been convicted of second degree murder," used a dangerous weapon, and lacked remorse or willingness to claim responsibility. The trial court found few mitigating factors. The record in Coleman and the record here are indistinguishable and yet there is a disparity of 25 years in the respective sentences.
While we are aware of the aggravating factors the trial court articulated, we are not persuaded that they justify the imposition of this sentence. This record does not establish that this defendant is the worst kind of offender and for that reason he should not receive the maximum sentence imposed. Moreover, at the time the defendant was sentenced, the sentencing guidelines which the trial court opted not to follow were still in effect.
Although the defendant was charged with second degree murder, the jury in this case found the defendant guilty of manslaughter. The jury verdict of manslaughter might have been a compromise verdict or even wrong-headed but it is not to be questioned. The jury, in finding the defendant not guilty of second degree murder cannot be legally wrong, and the trial court, as well as the appellate court, should honor that verdict.
The sentencing transcript clearly shows that because the trial judge disagreed with the jury's finding, he imposed the maximum sentence. The sentence was not tailored to the defendant nor the circumstances of the offense, nor was it imposed in response to a guilty plea.
The sentencing guidelines are only advisory and the sentencing judge may, after considering them, completely disregard them. Smith, 639 So.2d at 240. Appellate courts, however, when faced with a claim of excessiveness, should consider the recommendations of the Sentencing Commission, precedents and proportionality.
In the absence of aggravating circumstances, the guidelines suggest a sentence of between five (5) to seven and one-half (7½) years. The trial judge, without citing valid aggravating or personal circumstances or personal characteristics of the defendant, imposed the maximum of forty (40) years which is more than five (5) times greater than the maximum recommended by the guidelines and is disproportionately harsh as to this defendant when compared to other defendants convicted of manslaughter.
We do not find that the statute which provides for a sentence of zero to 40 years is unconstitutional. However, when the legislative branch chooses to grant wide latitude to the judicial branch by establishing a broad sentencing range, a heavy burden is placed upon reviewing courts to examine a maximum sentence for excessiveness.
Where overly broad sentencing ranges are established, only appellate review can assure a degree of consistency in sentencing practices. It is inimical to a fair system of justice that each trial judge should *1106 have unlimited discretion to impose any sentence of his or her choosing within that broad range without appellate review to bring about a reasonable degree of consistency.
Article 1, § 19 of the Louisiana Constitution (West 1977) provides, in part, that "[n]o person shall be subjected to imprisonment... without the right of judicial review...." This provision becomes relatively meaningless to persons imprisoned if total sentencing discretion is left with a trial court without appellate review for excessiveness. Justice by lottery or whim is not equal justice and is unacceptable in a democratic judicial system.
No constitutional provisions limit or modify this right of appellate review except Article V, § 5(C) (West Supp.1994) and Article V, § 10(B) (West Supp.1994) which limit the jurisdiction of the Supreme Court and Courts of Appeal in criminal cases to questions of law. A sentence imposed in a criminal case is not a question of fact. It is a question of judicial discretion which may be reviewed for legal error or abuse of discretion.
Prior to the adoption of the 1974 Constitution, neither the constitution, statutes, nor jurisprudence mandated nor permitted the appellate review of a sentence for excessiveness.
The 1921 Constitution only prohibited cruel or unusual punishment [emphasis added]. La.Code Crim.Proc.Ann. art. 878 (West 1984) (formerly Article 525 of the 1928 Code of Criminal Procedure) provides that unless the statute under which the sentence is imposed is found unconstitutional, a sentence shall not be set aside on the grounds that it inflicts cruel or unusual punishment [emphasis added]. These two provisions foreclosed any consideration of excessiveness. See State v. Vittoria, 224 La. 258, 261, 69 So.2d 36, 37 (La.1953).
The law changed in 1974 with the adoption of a new constitution which added a prohibition against excessiveness. The Supreme Court in State v. Sepulvado[3] recognized the prohibition against excessiveness and precipitated a new approach to the imposition of sentences and appellate review.
In 1977, the legislature, without depriving the trial courts of discretion, adopted La. Code Crim.Proc. art. 894.1 which set forth sentence guidelines. Most important it required the trial court to state for the record the reasons for the sentence. This gave the Supreme Court a sounder basis for determining whether the trial court abused its discretion, but the standard of review was still one of constitutionality.
In 1982 appellate review of non-capital cases was transferred to the various courts of appeal and a more careful review of sentences for excessiveness became possible. Still, the standard remained constitutional.
Obviously troubled by the disparity of sentences being imposed, the legislature in 1987 created the Louisiana Sentencing Commission and effective January 31, 1992, an entirely new sentencing scheme was enacted by the legislature. The Sentencing Guidelines are only a part of that scheme. The most significant change established a system of appellate review of sentences.
La.Code Crim.Proc.Ann. arts. 881.1(D) and 881.2(A)(1) (West Supp.1994) make it abundantly clear that the legislature intended that sentences would be reviewed for excessivenessnot just under the constitution but also under the new sentencing scheme. Article 881.3 (West Supp.1994) gives guidance to the appellate courts in reviewing sentences and 881.4(D) (West Supp.1994) clearly states that if the record does not support the sentence imposed it may be set aside for excessiveness. No where is the term constitutional excessiveness used. These articles are not in conflict with Article 878 which has as its source the 1921 constitution and the 1928 Code of Criminal Procedure. The new legislative sentencing scheme was adopted under the umbrella of the 1974 Constitution and Sepulvado. Once freed from the constitutional limitations of the 1921 constitution, the legislature was free to provide for a rational review of sentences imposed by trial courts. The scheme makes sense, it is consistent with modern sentencing practices, and there is no constitutional *1107 prohibition against appellate review for excessiveness.
It is unthinkable that appellate courts would refuse to exercise the authority or accept the responsibility so clearly given by the legislature to correct abuse and bring some uniformity to sentences. Therefore, we find that the trial court abused its discretion in imposing the maximum sentence in this case. The sentence when measured against precedents and the recommendations of the Sentencing Commission is excessive under Article 1, § 20 of the Louisiana Constitution (West 1977) as well as La.Code Crim. Proc.Ann. arts. 881.2 and 881.4.
Accordingly, the defendant's conviction is affirmed, but his sentence is vacated. The case is remanded to the trial court for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING
WALTZER, J., dissents with reasons.
WALTZER, Judge dissents with reasons.
I respectfully dissent.
This appeal came to this court initially on review for errors patent. We ordered a sentencing transcript and additional briefs in order to review whether the 40 year sentence imposed by the trial court was excessive.
The majority concludes:
"..., when the legislative branch chooses to grant wide latitude to the judicial branch by establishing a broad sentencing range, a heavy burden is placed upon reviewing courts to examine a maximum sentence for excessiveness. Where overly broad sentencing ranges are established, only appellate review can assure a degree of consistency in sentencing practices. It is inimical to a fair system of justice that each trial judge should have unlimited discretion to impose any sentence of his or her choosing within the broad range without appellate review to bring about a reasonable degree of consistency." (Emphasis supplied).
I cannot agree with the majority's holding that the sentencing ranges for manslaughter are "overly broad". Additionally, I find no authority for imposing a higher standard of review merely because the statutory range of permissible sentences is broad.
The majority compares the sentence in this case with a sentence imposed in State v. Coleman, 94-0666 (La.App. 4th Cir. 12/15/94); 647 So.2d 1355, and finds the sentence not only "inconsistent" but "excessive".
The pronouncements of the majority now oblige the sentencing judge not only to look at the facts and circumstances of the case and the propensities and background of the defendant for the sentence under consideration, but also to measure every maximum sentence in second degree murder cases which result in manslaughter verdicts with all other sentences in second degree murder cases which result in manslaughter verdicts. The burden imposed by this opinion would be identical to the burden imposed on the Supreme Court of our state in capital cases under La.C.Cr.P. art. 905.9 and Supreme Court Rule 28, Rule 905.9.1. When capital sentences are reviewed for excessiveness by the Supreme Court that court reviews every sentence of death in this state to determine if it is constitutionally excessive. In making that determination, referred to as a proportionality review, the high court decides whether the sentence was imposed under the influence of passion, prejudice or other arbitrary factors; whether the evidence supports the jury's findings in respect to statutory aggravating circumstances; and whether the sentence is disproportionate to the penalty imposed considering both the offense and the offender. A detailed Uniform Capital Sentence Report and Sentence Investigating Report is furnished expeditiously by the trial court, with the help of the District Attorney, Probation Department, defense lawyers, and those otherwise connected to the determination of the case. Clearly, this meticulous and exact procedure is mandated by the statute and must be followed.
In non-capital cases, such as that of Mr. Soraporu, to the contrary, there is no judicial or legislative authority to require the trial judge to conduct such a survey of sentences imposed under similar circumstances. The sentencing guidelines are advisory only and *1108 establish no duty on the trial judge to conduct such a review.
In reviewing the sentence and the record, I find that the trial court adequately considered the guidelines and articulated reasons for the imposition of the maximum sentence. The trial court stated at sentencing:
The Court does accept as a factual basis of the jury finding this defendant guilty of that particular charge. The facts to reiterate, that the defendant walked up behind the victim in this matter, Jimmie Watson and placed the gun to the back of his head, fired the gun and the victim dropped dead. There was an eye-witness to this incident. There was some indication that there was some argument that had been going on between the victim and other parties sometime prior to this particular episode. The Court feels that this act was a very cold and deliberate act. The Court feels that the jury gave the defendant some serious consideration in finding him guilty of the charge of manslaughter. This was in all essence a second degree murder and the defendant received some considerations by the jury. The Court has considered the sentencing guidelines under 894.1 of the Criminal Code of Procedure. The Court will opt not to follow the sentencing guidelines in this particular case. This defendant, although he is eligible to receive a suspended sentence this Court feels that this defendant is not entitled to receive a suspended sentence or to be placed on probation because of this offense. The Court also feels that if this defendant would receive any lesser sentence than the one that I will impose, it would deprecate in my opinion the seriousness of this particular charge. The Court also feels the defendant is in need of correctional treatment or a custodial environment that can be designed most effectively by his being placed into the State Penitentiary. Is there any prior criminal record with regard to this defendant, State?
After the trial judge was advised that the defendant had no prior record, the defendant was sentenced to serve 40 years at hard labor in the Department of Corrections.
I am not certain how the majority comes to the conclusion that the trial court disagreed with the finding of the jury. The trial court accepted the verdict but was of the opinion that the jury had been kind to the defendant. The trial court had heard the case, observed the witnesses and judged the credibility of each person testifying. The record reveals an execution style murder. An eyewitness testified that the defendant argued with the victim loudly 20 feet away from where he was standing. The defendant told the witness' family to go inside. In front of the eyewitness and his family, the defendant shot the victim in the head at close range. When the victim fell Soraporu said, "Now it's over," and walked off.
It seems to me that the trial judge could fairly conclude that this was not a killing in hot blood or in a jealous rage, but rather a deliberate and cold act, deserving of the maximum penalty. The jury's reduced verdict to the second degree murder charge saved the defendant from a mandatory life sentence without probation or parole. I interpret the judge's comments to mean just that and no more and no less. The trial judge found the maximum sentence to be appropriate considering the nature of the crime and the way in which it was committed. There are many imponderables which enter into rendition of a sentence, many of them are not discernable from a written record. I find that the trial court adequately considered the sentencing guidelines and that he articulated his reasons for the sentence.
I would also find that the sentence imposed is not constitutionally excessive. The 1992 revision of La.R.S. 14:31 establishing the sentencing range has not been challenged in this case as being unconstitutional and the sentence is valid under the statute in all respects. It is the legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Hudson, 442 So.2d 735 (La.App. 1st Cir. 1983). Courts are charged with applying these punishments unless they are found to be unconstitutional. State v. Stetson, 317 So.2d 172 (La.1975). There is no question that this court maintains the distinct responsibility of reviewing sentences imposed in *1109 criminal cases for constitutional excessiveness. State v. Sepulvado, 367 So.2d 762 (La. 1979). Our Constitution states in pertinent part "No law shall subject any person ... to cruel, excessive and unusual punishment." 1974 La. Const. Art. I, Section 20. This provision gives the courts, in the exercise of their judicial power, a basis for determining that sentences, whether fine, imprisonment or otherwise, though not cruel or unusual, are too severe as punishment for certain conduct and thus unconstitutional. However, this does not mean that we can ignore the standard of review set out by our Louisiana Supreme Court. In State v. Smith, 639 So.2d 237, 240 (La.1994) the Supreme Court held:
(1) while a trial judge must consider the guidelines, he has complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive (FN: `In Louisiana, the trial judge has primary responsibility for determination of whether the sentence is constitutionally excessive. See State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993)) but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the record the considerations taken into account and the factual basis for his imposition of that sentence, La.Code Cr.P. art. 894.1; and (2) where the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.
This Court's most recent pronouncement on the issue of variance from the guidelines properly follows the Smith rule. In State v. Wise, 644 So.2d 230, 234 (La.App. 4th Cir. 1994), this Court held:
Under Smith, the trial judge has "complete discretion to reject the Guidelines" which means the suggested sentence may be ignored, as well as the listed aggravating and mitigating factors.
I do not minimize the grave constitutional obligation we have in reviewing the actions of trial courts. Neither do I trivialize the defendant's lengthy incarceration. However, I am not able to agree with the majority by cutting a standard out of new cloth and ignoring the Supreme Court's mandate set forth in State v. Smith, supra.
I agree that judges and juries will not always come to like results under like circumstances and that discretion in sentencing is often an imponderable component in the process. I am not willing, however, to make the trial judges into mindless bureaucrats armed with a rule book and a complete survey of all sentences previously rendered that disallow any deviation whatever. This is especially so since that potential rule book, i.e. the Guidelines, is, under the law of Louisiana and the law of this Circuit, advisory only.
NOTES
[1] The defendant was granted additional time to file a pro se brief on December 9, 1993; however nothing was filed until June 29, 1994, when he submitted a motion requesting more time to address the two errors which he listed.
[2] According to the record, the appellant was twenty-one in 1993. However, we know nothing of his background, education, family, or work-history.
[3] 367 So.2d 762 (La.1979).