738 So.2d 699 (1999)
STATE of Louisiana
v.
Leroy J. RABY.
No. 98-KA-1453.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1999.
Harry Connick, District Attorney Orleans Parish, Richard R. Pickens, II, Assistant District Attorney, New Orleans, Louisiana, Counsel For Plaintiff/Appellee.
Karen G. Arena, Louisiana Appellate Project, Metairie, Louisiana, Counsel For Defendant/Appellant.
Court composed of, Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS Sr., Judge ROBERT A. KATZ.
BAGNERIS, Judge.

I. STATEMENT OF THE CASE

Defendant, Leroy Raby, was charged with possession with intent to distribute cocaine, a violation of La.R.S. 40:967(B)(1). Raby was arraigned on May 12, 1997 and entered a plea of not guilty. On June 25, 1997, the district court found probable cause and denied Raby's motion to suppress *700 the evidence. On September 17, 1997, following a trial on the merits, Raby was found guilty as charged. On September 25, 1997, Raby filed a post-verdict judgment of acquittal and a motion for a new trial. The state filed a multiple bill of information against Raby. On October 17, 1997, the District Court denied both motions. On December 12, 1997, the district court adjudicated Raby a second offender. Raby was sentenced to serve fifteen years at hard labor with credit for time served but without benefit of probation or suspension of sentence. The District Court denied Raby's motion to reconsider the sentence.
Raby's brief was filed on July 27, 1998. The State's brief was filed on August 10, 1998.

STATEMENT OF THE FACTS:
Officer William Ceravolo testified that on February 22, 1997, at approximately 11:00 a.m., he was assigned to the Sixth District narcotics unit with his partner, Detective Jake Schnapp. The two officers, dressed in plain clothes, were conducting a proactive patrol in a black Taurus. The officers were looking for illegal drug activity. During their patrol, Officer Ceravolo received a tip from a confidential informant that a black male was selling drugs in the area of Sixth and Magnolia Streets in the Magnolia Housing Project. The informant provided an approximate age and clothing description of the black male. The officers drove to the area in question and positioned their car for surveillance so that they had a clear and unobstructed view of an area known as "the circle". They were approximately one to one and one-half blocks away. They observed Raby who matched the description given by the informant. During their surveillance, the officers observed two subjects separately approach defendant and engage in what they believed to be drug transactions. Each subject engaged in a brief conversation with Raby. Each subject handed Raby paper currency. Raby removed a small object from his pocket, opened the object, removed something and handed it to the subject who then walked away. After observing these two transactions, Officer Ceravolo stated he and his partner relocated to the area in question to attempt to stop Raby and investigate their suspicions of drug activity. When Raby observed the officers approaching, he moved backwards towards the 2800 block of Clara Street. As the officers exited their vehicle, Raby removed a small bottle from his pocket, turned away from the officers and began using a "spraying motion" to dump the contents of the bottle on the ground. The officers were approximately ten feet from Raby. Raby was stopped and walked back to the unmarked police unit. A search was conducted for weapons. The search revealed a small medicine bottle containing a white residue, which the officers believed to be cocaine. In addition, $102.00 in cash was seized in denominations of five-dollar bills, one-dollar bills and twenty-dollar bills. Raby was arrested for drug trafficking and advised of his rights. Officer Ceravolo testified Detective Schnapp retrieved thirty pieces of crack cocaine, the contents of the bottle the officers observed Raby dump on the ground. Officer Ceravolo testified the confidential informant did not provide Raby's name as the man selling the drugs in "the circle". Officer Ceravalo testified that at the time of Raby's arrest several other people were in the area but they were not associated with Raby. Officer Ceravola testified a controlled buy was not made because the necessary funds were not available on Saturday. Instead, the officers opted to conduct a surveillance of possible drug activity by Raby.
Officer Ceravolo testified that he and his partner were not using high-powered binoculars to observe Raby. Officer Ceravolo testified the two suspected buyers were not stopped. He testified that Raby did not make any inculpatory statements and that he was calm and did not resist arrest. Officer Ceravolo testified that crack cocaine normally sells for ten to twenty dollars *701 depending on the size of the piece. He stated he conducted a computer check of Raby's name at the police station. Officer Ceravolo testified he had no recollection of the name "Stone" being discussed with Raby.
Detective Jake Schnapp testified he was assigned to the Sixth District task force on February 22, 1997 and was working with Officer Ceravolo. He stated he participated in a surveillance in the Magnolia Housing project on that day with Officer Ceravolo. During the surveillance the officers observed Raby standing in "the circle". The officers relocated to within several feet of Raby and exited their car, at which time, Raby began to walk backwards. As the officers approached Raby, removed an amber-colored medicine bottle from his right front jacket pocket and turned around. Raby made a "sweeping motion" at which time, Detective Schnapp observed several white objects fall to the ground. Officer Ceravolo detained Raby while Detective Schnapp retrieved the white objects from the ground. Detective Schnapp testified it was approximately 11:00 a.m. and the weather was clear and sunny. He stated one or two other people were also in the area. They were detained and released. He testified he never observed these other people make any kind of discarding motion or attempt to conceal anything.
Detective Schnapp testified Raby was not named as the person dealing drugs. He stated that no high powered equipment was used to observe Raby. The surveillance was conducted from approximately one to one and one-half blocks away. He testified Raby was advised of his Miranda rights and did not make any inculpatory statements or resist arrest. Detective Schnapp denied asking Raby to become an informant and did not recall hearing Officer Ceravolo make a similar request. Detective Schnapp did remember having a conversation with Raby about a "Michael or a Stone".
Detective Schnapp testified rock cocaine sells from five to twenty dollars depending on the size of the piece. He stated that he has observed sales of rock cocaine for seven dollars and fifty cents and thirteen dollars. He testified a large amount of one-dollar bills is not uncommon for street level dealers to carry. He testified that he did not ask Raby where he got the money, and Raby did not volunteer such information. He further testified that drug-sniffing dogs were not used to sniff the money for drugs because the amount was too small.
Detective Schnapp testified that "Stone" is a man named "Alvin Nelson" whom he has arrested in the past on drug and weapons violations. He stated Nelson was not in "the circle" when Raby was arrested. He denied knowing a "Michael" who works in and around "the circle". During the surveillance he observed what appeared to be two separate drug transactions involving Raby.
Detective Schnapp testified he based his assumption that defendant was trafficking in drugs on nine years experience in the narcotics unit of the New Orleans Police Department. He stated he could clearly see the exchange of currency between Raby and the two suspect buyers but could not identify the other object handed to the buyers. He stated the suspected buyers were not stopped.
Raby testified in his own behalf. He stated that he had one prior conviction for theft. He testified that on February 22, 1997, at approximately 10:50 to 11:00 a.m. he was in his front yard in the Magnolia Housing project where he lives at 2709 Sixth Street, Apt. 3. He described his residence as "one porch down" from "the circle". He stated there is a lot of drug activity in the project.
Raby testified he works with his father pouring cement approximately two or three times per week and is paid in cash. Raby admitted the police seized $102.00 from his pocket. Raby testified this money came from his job, and he had been *702 paid on the Thursday prior to his arrest. Raby denied the medicine bottle seized by the police came from his jacket pocket. Raby denied discarding the thirty pieces of crack cocaine.
Raby testified that on that morning he, his "little partner" and Michael were standing in his front yard when the police drove up in an unmarked car. Raby testified that Michael threw the cocaine on the ground when the officers called him and Michael to the car and "checked" them. The officers picked up a bottle and some cocaine from the ground and asked to whom they belonged. Raby denied they belonged to him. Michael also denied they belonged to him. Raby was arrested.
Raby identified "Michael" as Michael Gray. Raby testified the officers detained three people including Michael and they all had money on them. Raby testified that after his arrest the police placed him in their car and drove around. The officers asked him if he knew "Stone" or "anything bigger than this here, ... because they weren't all for taking me to jail for no, ah, for no little rocks".
Raby stated he told the police he knew "Stone" because he lived around the corner but he did not know where he kept his "stuff". He stated the police offered to let him go if he provided information about "Stone". He told the officers he did not know anything about "Stone". He denied exchanging anything for money with two people that morning. He stated he had no prior drug convictions.
Raby identified the other person who was with him as Corey Kelly. Raby stated both Corey and Michael have prior convictions and spent time in prison. He testified he told the police when they placed him inside the car that the cocaine they found belonged to Michael. He stated he does not know what "Stone" does for a living.
Raby testified he was paid seventy-five dollars on the Thursday prior to his arrest. He denied seeing the bottle or the thirty pieces of crack cocaine until they were thrown on the ground. He stated he has no documentation to prove he was paid on the Thursday prior to his arrest.

ERRORS PATENT:
A review for errors patent reveals none.

DISCUSSION:
Raby asserts his counsel was ineffective for failing to object to prejudicial hearsay testimony. Specifically, Raby contends his counsel failed to object to the following testimony of Officer Ceravolo concerning the tip he received from the confidential informant:
A. After I received some information about illegal activity that was taking place in the area of 6th and Clara, we relocated to the area and placed ourselves in a position where we had a clear and unobstructed view of the location, which is known as "the circle" in the development.
* * *
A. Looking in the circle. We were looking for a black male that had been described to me by an informant. I had been given the approximate age and clothing of the subject before we went over there.
Q. And did you, indeed, observe an individual meeting that description?
A. Yes we did
Raby further complains that during the cross-examination of Officer Ceravolo, counsel clarified this hearsay testimony by bringing out the fact that the informant identified Raby as a drug dealer:
Q. Let me go back to that particular date. Did you receive information from a citizen that Mr. Raby was involved in any kind of drug activity, by name?
A. By name?
Q. Yes
A. No.
Raby argues that this testimony was unnecessary to explain the officers' presence *703 in the housing project. Raby contends that by not objecting, his counsel allowed the prosecution to begin its case with evidence of Raby's guilt as a perpetrator. Furthermore, Raby asserts his counsel's failure to object undermined his defense that the officers arrested the wrong person.
Raby's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). Raby must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, Raby "must show that" there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. Raby must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
This court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). State v. Soraparu, 93-1636 (La.App. 4th Cir. 1/19/95), 649 So.2d 1100.
The Louisiana Supreme Court in State v. Wille, 559 So.2d 1321, 1331 (La.1990) stated:
When an out-of-court statement, such as information received by a police officer during an investigation of a crime, has both an impermissible hearsay aspect and a permissible nonhearsay aspect, the issue of relevancy becomes significantly interrelated with the hearsay issue. If the nonhearsay content of the statement has little or no relevance, then the statement should generally be excluded on both relevance and hearsay grounds. Marginally relevant nonhearsay evidence should not be used as a vehicle to permit the introduction of highly relevant and highly prejudicial hearsay evidence, which consists of the substance of an out-of-court assertion that was not made under oath and is not subject to cross-examination at trial.
In State v. Hearold, 603 So.2d 731, 737-38 (La.1992), the Louisiana Supreme Court added:
Generally, an explanation of the officer's actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called "explanation" involves a direct assertion of criminal activity against the accused... Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an "explanation exception." The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by *704 the likelihood that the jury will consider the statement for the truth of the matter asserted.
In Wille, the statements made to the FBI agent were presented almost solely for their relevance and assertive value in establishing defendant's guilt. In Hearold, the officer's testimony went beyond the scope of the questions about the substance of the investigation. In the instant case, Ceravolo's testimony referred to a statement made to him by the informant in order to explain the sequence of events leading to the arrest of defendant. The statement was not offered to prove the truth of the matter asserted. Therefore, the complained of testimony did not constitute impermissible hearsay testimony. No objection was necessary.
Even assuming, arguendo, the statement did constitute impermissible hearsay testimony, it may be considered harmless error if the reviewing court determines beyond a reasonable doubt that the improperly admitted hearsay did not contribute to the verdict. Wille, 559 So.2d at 1332. Therefore we find the error, is harmless. Ceravolo further testified:
Q. And did you, indeed, observe an individual meeting that description?
A. Yes, we did.
Q. When you initially observed that person, what did you do?
A. At that point, upon observing the subject, we focused our attention on him as well as any other people that were in the circle area and conducted a surveillance, at that time, of the area.
Q. Did you observe anything that stood out to you?
A. During the course of the surveillance, we observed two individuals approach the subject. They became involved in what appeared to be a brief conversation. The subjects that would approach the target individual, they would hand him what appeared to be paper currency, at which time, the subject who was the target removed a small object from his pocket, opened it up, took something out of it, and handed it to the subjects who subsequently walked away out of the area
Thus, Ceravolo's explanation of what the informant told him was not the sole evidence of defendant's guilt. Consequently, there was no prejudice. Raby's assignment of error is without merit. Therefore, we affirm Raby's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.