573 So.2d 1210 (1991)
STATE of Louisiana
v.
Jerome ROBINSON.
No. 89-KA-2032.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1991.
*1211 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for appellant.
Harry F. Connick, Dist. Atty., David Arena, Asst. Dist. Atty., New Orleans, for appellee.
Before SCHOTT, C.J., and KLEES and CIACCIO, JJ.
CIACCIO, Judge.
Defendant, Jerome Robinson, was convicted by a twelve person jury of armed robbery, a violation of LSA-R.S. 14:64. The trial judge sentenced him to ninety-nine years at hard labor without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction and sentence. We affirm.
Julie Brannon testified that on June 8, 1986 at 1:30 p.m. she returned to her home near the corner of Dauphine and Barracks Streets in the French Quarter. She noticed the defendant standing on the corner leaning on a big wooden club. She parallel parked her car a half block away and exited her car. As she walked around the back of her car, the defendant emerged from behind a light post and demanded Brannon's purse. Brannon held her purse tightly and they struggled. Defendant then hit her on the arm with the club causing her arm to bleed. He continued swinging the club so Brannon relinquished her purse. A man responded to her screams and the two chased the defendant but he escaped. The purse contained a Rolex watch, a diamond necklace, credit cards, a check book and a driver's license. Officers Roland Bouquet and Aaron Montgomery answered Brannon's call, and she gave them a description of the defendant. She later identified him in a photographic line-up.
Officer Ronald Doucette testified that on June 10, 1986 at 3:00 p.m., he and his partner were patrolling the area of Dauphine and Barracks Streets due to a proliferation of street crimes in the area. They were in an unmarked car. He noticed two *1212 men on the corner. They were later identified as Willie Starworth and the defendant. At the time, the defendant was leaning on a club. As Doucette passed, the two looked at him as if they recognized the police car. Doucette drove around the block. When the two saw him, they began to walk away quickly in different directions. He stopped the car and identified himself and told the two men to step up to the car. Starworth began reaching in his back pocket. Doucette then reached into the pocket and discovered a "butterfly knife." He frisked both subjects but found no other weapons. Doucette asked the two men for identification and the defendant produced the driver's license of a white female. Doucette, realizing it was not the defendant's identification, asked the defendant for another identification. Defendant then gave him the driver's license of another black male. When Officer Doucette again asked for identification, the defendant gave him a credit card with Julie Brannon's name on it. Defendant then gave a third identification which was not his. When Officer Doucette asked for an explanation, the defendant told him he had a white girfriend who had left the driver's license with him. Doucette asked her name and where she lived but the defendant did not know. Defendant then told him he had seen her around the corner on a date. He explained that the second driver's license belonged to his friend and that the two must have confused them. Doucette then asked about the credit card and the defendant told him he had found both objects on the corner that afternoon. Doucette then placed the defendant under arrest for obstruction of a sidewalk and the other suspect under arrest for carrying a concealed weapon.
Officer Elizabeth Joseph testified that she met Brannon when Brannon came to identify her driver's license and credit card. Several weeks later, Joseph showed Brannon a photographic line-up and Brannon identified the defendant as the man who stole her purse.
In his original brief filed on appeal, defendant raises one assignment of error. A pro se supplemental brief filed raises three additional assignments of error. We will address all four assignments of error. Our review of the record reveals there are no errors patent.
By his first assignment of error, defendant contends the trial judge erred in denying his motion to suppress the evidence and identification.[1] He argues the stop and arrest were unconstitutional, and that the photographic line-up and subsequent identification resulting therefrom should have been suppressed.
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense. LSA-C.Cr.P. art. 215.1. Reasonable suspicion required for an investigatory stop is something less than probable cause required for arrest. The reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990). Mere suspicion of activity is not a sufficient basis for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La.1982).
In the instant case defendant and his companion were standing on the corner of Barracks and Dauphine Streets. At the time, defendant was armed with a club. The officers testified they had increased patrols in the area because of a series of recent armed robberies, simple robberies and purse snatchings in the area of the French Quarter between Esplanade Avenue and Barracks Street and North Rampart and Dauphine Streets. As the officers approached in their unmarked vehicle and made eye contact with the suspects, the two men began to engage in an animated type of conversation. As soon as the officers passed, they stopped conversing. The officers continued down Barracks Street *1213 and turned the corner at N. Rampart. They went around the block. As they drove up Dauphine Street a second time, the officers saw one of the suspects peering around the building on the corner from Barracks Street as though they were looking for the officers' vehicle. When the two men saw the vehicle the second time they began to walk away quickly in different directions. Officer Doucette testified that they stopped their vehicle and identified themselves as police officers. The officers instructed the two men to come over to the unmarked vehicle. Noticing Starworth had reached down around his back, Officer Doucette ordered him to freeze. He continued reaching around his back so Doucette grabbed and frisked him and found the knife. Fearing that Robinson was also armed, Officer Doucette frisked him too but found no weapons on his person. The officers then requested identification from the two men and the defendant produced Brannon's license.
The suspicious conduct in question occurred in an area of the French Quarter that the police officers knew had recently been plagued with several violent crimes, including purse snatchings and robberies and which was targeted for particular attention on this particular afternoon. Based on this and the facts that the officers knew the defendant had a club in his possession, the defendant and his friend recognized them in the unmarked car as policemen and reacted in an unusual manner even to the extent of peering around the corner after them on their first pass, and the two men fled upon seeing the police vehicle a second time, we find the police officers had reason to suspect the defendant had committed, was committing or was about to commit a crime. The officers were reasonably entitled at that time to question the defendant and Starworth and to make an investigatory stop or detention for that purpose.
The seizure of the driver's license and credit card and the subsequent photographic line-up and identification were products of a constitutionally permissible investigatory stop. Therefore we find no error in the trial court's denying the defendant's motion to suppress the evidence and identification. This assignment of error is without merit.
As his first assignment of error alleged in the pro se supplemental brief, defendant argues the evidence produced at trial was insufficient to support the conviction.
When reviewing a conviction for sufficiency of the evidence an appellate court must determine if any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the essential elements of a crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
LSA-R.S. 14:64 defines armed robbery as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation, while armed with a dangerous weapon.
At trial Brannon testified that on the day of the incident, the weather was sunny. She stated she saw the defendant standing on the corner and saw him look directly at her as she proceeded to drive across the street. Brannon described the club the defendant had in his possession as similar to a baseball bat only larger. After she parked and exited her car in the next block the defendant approached her. He grabbed her purse and she resisted. He then struck her with the club. According to Brannon, they struggled for five to eight minutes with the defendant directly in front of her, eye to eye, the entire time. She stated he continued to hit her on the arm with the club until she relinquished her purse. Brannon positively identified the defendant in a photographic line-up and at trial as the person who stole her purse. These facts are sufficient to support a conviction of armed robbery. State v. James, 545 So.2d 560 (La.App. 4th Cir.1989), writ denied 551 So.2d 618 (La.1989). This assignment lacks merit.
As the next assignment of error, defendant argues the trial judge erred by allowing, the State, over the objections of defense counsel, to introduce the victim's credit card after he had ruled the credit *1214 card inadmissible at the prior motion to suppress hearing. During Officer Doucette's testimony in response to the State's question, he testified defendant had a credit card with the victim's name on it whereupon defense counsel moved for a mistrial. Defendant contends that the trial court erred in overruling the motion. The ruling was correct. Evidence that the defendant had the victim's credit card as well as her license stolen two days previously was admissible.
As his final assignment of error, defendant argues the trial judge erred by not considering any mitigating circumstance as mandated by LSA-C.Cr.P. art. 894.1, the sentencing guidelines, when sentencing defendant and in imposing an excessive sentence.
In the instant case, the ninety-nine year sentence imposed without benefit of parole, probation or suspension of sentence is the maximum provided under LSA-R.S. 14:64. If a sentence falls within the ambit of the statute, as it does in this case, it may still violate Article I, Section 20 of the Louisiana Constitution prohibiting "cruel, excessive or unusual punishment." State v. Cann, 471 So.2d 701 (La.1985).
A constitutionally excessive sentence is one that is "grossly out of proportion to the severity of the crime" or "is nothing more than purposeless and needless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 reh. denied, Brogdon v. Louisiana, 473 U.S. 921, 105 S.Ct. 3547, 87 L.Ed.2d 670 (1985).
To determine if a sentence is unconstitutionally excessive, an appellate court reviews the reasons given by the trial court for imposing a particular sentence. State v. Davis, 449 So.2d 452 (La.1984). The trial court's sentencing decision must be based upon the criteria set forth in LSA-C.Cr.P. art. 894.1, which requires the court to specify the factors it has considered in imposing a particular sentence. While the trial court need not articulate every aggravating and mitigating circumstance presented in article 894.1, the record must reflect the court considered these guidelines in particularizing the sentence to the defendant. State v. Guiden, 399 So.2d 194 (La. 1981), cert. denied, Guiden v. Louisiana, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). In accordance with article 894.1 guidelines, the sentencing transcript should reflect that the trial court considered the personal history and past criminal history of the defendant and the severity of the crime. State v. Quebedeaux, 424 So.2d 1009 (La.1982), appeal after remand, 446 So.2d 1210 (La.1984).
The record in this matter indicates the trial judge specifically considered the LSA-C.Cr.P. art. 894.1 guidelines as well as defendant's personal history and past criminal record. Particularly, the trial judge noted defendant's lengthy juvenile record, his escape from a juvenile correctional facility and his lengthy criminal record since he had turned seventeen years of age. According to the trial judge, the defendant was given every opportunity to reform himself but he refused to do so. The trial judge opined that the defendant earned the maximum sentence.
After reviewing the record and considering defendant's continued criminal activity, we neither find the trial judge abused his discretion in sentencing the defendant nor imposed an excessive sentence. This assignment is without merit.
Accordingly, for the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The motion was granted to suppress a credit card, but the credit card was later admitted into evidence on the grounds that the defendant opened the door to evidence concerning it.