_JjKLEES, Chief Judge.
On August 17, 1994, the defendant, Kevin Washington, was charged with eleven counts of armed robbery in violation of La. R.S. 14:64.[1] On September 22, 1994, the *1193 defendant filed preliminary and suppression motions. The State contended that the defendant was arraigned on that date, but the docket master and minute entry do not reflect that the defendant was arraigned. A motion hearing was held on June 23, 1995. The trial court held the matter open for additional evidence as to counts one, two, three, four, five, six, seven, nine and ten. As to counts eight and eleven, the trial court found probable cause and denied defendant’s motion to suppress identification. On October 25, 1995, a motion hearing was held as to counts one and two. The trial court found probable cause and denied defendant’s motion |2to suppress identification. A subsequent motion hearing as to count six was held on January 29,1996. The trial court denied defendant’s motion to suppress identification. On April 18, 1996, an arraignment was conducted and defendant pled not guilty to all counts. A motion hearing as to count seven was held on June 17, 1996. The trial court denied defendant’s motion to suppress identification. On November 12, 1996, the State elected to try the defendant on counts one, two, six, seven and eight. After a jury trial, the defendant was acquitted on count six and found guilty as charged on counts one, two, seven and eight. On December 5, 1996, the defendant was sentenced to ninety-nine years at hai’d labor without benefit of probation, parole or suspension of sentence on each count.[2]
The State subsequently filed a multiple bill of information. A multiple bill hearing was held on July 29, 1997. The defendant was adjudicated a third offender. The trial court vacated the previous sentence imposed on count two and resentenced the defendant under the multiple bill to ninety-nine years at hard labor without benefit of probation, parole or suspension of sentence.[3] Defendant now appeals on the basis of three assignments of error.

I. STATEMENT OF THE FACTS

Shawn McClue was employed as a cashier at the Lakeview Conoco service station on February 20, 1994. At approximately 7:30 a.m., the defendant entered the store. The defendant asked the price of orange juice and walked to the back of the store. Another customer, who was purchasing gasoline, came in. The defendant left the store. After the other customer left, the defendant reentered the store, showed Mr. McClue a gun and told McClue to give him the money in the register. When the defendant realized that there was not much money in the register, the defendant told McClue to give him a few cartons of cigarettes and a | ¡¡couple bottles of Crown Royal. The defendant then left the store. Mr. McClue called 911 and reported the robbery. Mr. McClue gave the police officers a description of the suspect. He described the perpetrator as having a light brown complexion, average build, the beginnings of goatee and wearing light blue jeans and a camouflage jacket. The weapon was a .38 caliber. Mr. McClue gave the officers the store’s surveillance tape. Mr. McClue identified the defendant at trial and in a photographic lineup as the perpetrator.
In the early morning hours of February 20,1994, Mr. Matthew Vernasey was doing *1194 his laundry at a laundromat on Harrison Avenue. He observed a green vehicle parked on a side street near a Conoco service station which was across the street from the laundromat. The male subjects were standing near the vehicle. Mr. Ver-nasey went inside the laundromat. When he returned outside, he noticed that one of the men was standing in front of the Cono-co station. The subject standing outside the service station was wearing a camouflage jacket. Mr. Vernasey left the area for a short time. When he returned, Mr. Vernasey saw the vehicle on Canal Boulevard. The two black male subjects were inside the vehicle. The vehicle had a University of New Orleans bumper sticker on it.
Officer Brian Barbazion of the New Orleans Police Department responded to the armed robbery call on February 20, 1994. The officer met with the witness and victim and prepared a report. The officer also collected a videotape of the robbery from the victim. The tape was played to the jury.
On February 19, 1994, Susan Trout was working the midnight shift at the Time Saver on Broadway and Claiborne Avenue. A little after midnight, the defendant walked into the store, came to the counter and pulled out a gun. The defendant told Ms. Trout to give him all the money. He also requested some Rcartons of cigarettes. Ms. Trout gave the defendant the money from the register and the cigarettes he demanded. Ms. Trout contacted the police as soon as the defendant left. Ms. Trout gave a description of the weapon and the perpetrator to the police officers. She stated that gun was silver in color. The perpetrator was approximately 155 pounds, medium build, medium complexion and between the ages of thirty and thirty-five. Ms. Trout also stated that the perpetrator appeared to not have shaven in a few days. She identified the defendant at trial and in a photographic lineup as the perpetrator. Ms. Trout indicated that there was a surveillance camera in the store. The videotape of the robbery was given to Time Saver’s security division.
Officer Andre Carter responded to the armed robbery call from the Time Saver at approximately 12:35 a.m. Officer Carter interviewed Ms. Trout and prepared the initial report.
Angela Ratcliff walking out of the McDonald’s on St. Claude Avenue on March 20, 1994, when a black male robbed her. Ms. Ratcliff, employed at the McDonald’s, was on her way to the bank to make a deposit. As she walked to her car, a black male came up to her and put a gun to her waist. He told her to give him her purse. Ms. Ratcliff complied with the perpetrator’s demands. After the robbery, Ms. Ratcliff returned to the McDonald’s and called the police. Ms. Ratcliff was not able to identify the perpetrator.
Ms. Darlene Reno saw the defendant rob Ms. Ratcliff. Ms. Reno had been waiting at the bus stop on the corner of St. Claude Avenue and Franklin Avenue. The defendant approached her and asked what bus had just passed. A few minutes later, Ms. Reno saw the defendant approach Ms. Ratcliff and put a gun to her side. Ms. Ratcliff gave the defendant her purse, and he left the scene. Ms. Reno spoke |swith the police when they arrived and provided the officers with a description of the perpetrator. She stated that the defendant was wearing a plaid jacket or shirt. Ms. Reno identified the defendant at trial and in a photographic lineup as the perpetrator.
Officer Ronald Singleton responded to the armed robbery call on March 20, 1994, at approximately 12:00 p.m. The officer spoke with the victim, Ms. Ratcliff, and the witness, Ms. Reno. He obtained identification information from Ms. Reno.
Sidney Anthony and Demetris Bennett were working at the Subway sandwich shop on Earhart Boulevard on March 23, 1994. While Mr. Anthony was waiting on two customers, he observed the defendant walk into the store. The defendant was wearing a camouflage jacket with the hood on his head. The defendant opened his jacket and showed Anthony a rifle. He *1195 told Anthony to give him all the money. Ms. Bennett attempted to walk away while the robbery was in progress. The defendant told her to stay where she was. Mr. Anthony took the money out of the register and gave it to the defendant. The defendant then left the scene. Anthony then called the manager and the police. Mr. Anthony and Ms. Bennett provided the police officers with a description of the perpetrator. They described the perpetrator as a black male, 5T1”, wearing a camouflage jacket. Both Mr. Anthony and Ms. Bennett identified the defendant at trial and in a photographic lineup as the perpetrator.
Officer Dennis Bush responded to the robbery call from Subway at approximately 2:45 p.m. on March 23, 1994. The officer interviewed Mr. Anthony and Ms. Bennett after the robbery.
On March 25, 1994, Monique Bourgeois Saldano and Juliette Flowers were working at the Harrison One Hour Cleaners on Harrison Avenue. Monique was | ¿working at the front counter and Juliette was in the back when the defendant entered the store. The defendant was wearing black sweatpants, a camouflage jacket and a brown cap. The defendant showed Ms. Saldano a gun and told her to give him the money from the register. Ms. Flowers walked to the front of the store while the robbery was in progress. She saw Ms. Saldano give the defendant the money as he demanded. The police were called after the defendant left. Ms. Saldano and Ms. Flowers provided a description of the perpetrator to the police. Both Ms. Salda-no and Ms. Flowers identified the defendant at trial and in a photographic lineup as the perpetrator.
Officer Robert Hart responded to the armed robbery call from the Harrison One Hour Cleaners at approximately 5:40 p.m. on March 25,1994. The officer spoke with Ms. Saldano, Ms. Flowers and a witness, Mr. Sam Gacy. The officer obtained a description of the vehicle used by the perpetrator from Mr. Gacy. According to Mr. Gacy, the perpetrator parked the vehicle four houses from the cleaners, exited the vehicle and entered the cleaners. A few minutes later, the perpetrator came out of the cleaners and ran behind the business. The vehicle which the perpetrator was driving was green and had heavy damage to the front end. It appeared that the front bumper or grill was missing. Mr. Gacy was able to obtain the license plate number on the vehicle and provided that information to Officer Hart.
At approximately 6:00 p.m. on March 30, 1994, Noel Doubtree, III, was standing on the second floor balcony of his apartment, which overlooks Audubon Boulevard and Hickory Street. Mr. Doubtree saw a green Chrysler K-car drive down Hickory Street after it turned onto Hickory from Broadway. There were two occupants in the vehicle. The passenger exited the vehicle on the river side curb of |7Hickory Street half way between Broadway and Audubon Boulevard. The driver then drove the vehicle down to Audubon Boulevard and stopped in front of a driveway. The passenger walked down towards Audubon Boulevard and reentered the vehicle. Mr. Doubtree also observed a police officer on private detail parked at the intersection of Audubon Boulevard and Hickory Street.
Officer Reggie Jacques was working a private detail on March 30, 1994. He was part of the neighborhood watch program for Audubon Boulevard from Claiborne Street to Willow Street. Between 6:00 p.m. and 6:30 p.m., the officer observed a green vehicle occupied by two black males enter the area and appeared to be casing the area. The vehicle turned onto Audubon Boulevard, went down to Willow Street, made a u-turn, came back up to Audubon Boulevard, and turned onto Hickory Street. At that time, the officer started to follow the vehicle. The vehicle made a left turn onto Green Street and went down Green Street to Broadway. The vehicle then turned onto Broadway and then continued to Hickory Street. When the officer turned from Broadway onto Hicko *1196 ry, he noticed that the passenger had exited the vehicle and was standing on the corner of Audubon Boulevard and Hickory Street. The driver of the vehicle was attempting to park the vehicle on Audubon Street. When the officer made it to the corner of Audubon and Hickory, he made eye contact with the passenger. The passenger then proceeded immediately to the green vehicle. Once the passenger entered the vehicle, the driver took off. Officer Jacques activated his blue light and pulled the vehicle over. The officer also requested assistance from other units at this time. The driver of the vehicle, the defendant, exited the green vehicle and approached the officer. The defendant did not have a driver’s license but gave the officer his name. The officer conducted a pat down search for his safety. The passenger,_J¿Clifford Jones, then exited the vehicle. Jones informed Officer Jacques that he owned the vehicle. While Jones did not have a driver’s license, he produced an old traffic ticket with his name on it. The officer then proceeded to check the vehicle for weapons. The officer found a revolver in the vehicle. He secured the weapon and turned it over to the Crime Lab. Other officers subsequently arrived to provide assistance. However, the defendant was able to escape before the other officers arrived. The passenger, Clifford Jones, was arrested.
Officer Sal Carma responded to Officer Jacques’ call for assistance. He assisted in the search of the vehicle. The officer recovered a .44 caliber blue steel revolver. At trial, Officer Carma identified the weapon he found in the vehicle. Officer Timothy Bayard also responded to Officer Jacques’ call. When he arrived on the scene, Officer Jacques was standing next to the green vehicle with a subject. The green vehicle had an UNO sticker on the back window.
Officer David Patrollia conducted the follow-up investigations of the armed robberies which occurred at the Time Saver on Broadway, the Conoco service station on Harrison Avenue, the McDonald’s on St. Claude Avenue, the Subway sandwich shop on Earhart Boulevard, and the Harrison One Hour Cleaners on Harrison Avenue. The officer prepared photographic lineups that he presented to the victims and witnesses. As a result of the photographic lineups, the defendant was identified as the perpetrator of the robberies by Ms. Trout, the manager of the Time Saver; Mr. Shawn McClue, the cashier at the Conoco station; Ms. Darlene Reno, the witness in the McDonald’s robbery; Mr. Sidney Anthony and Ms. Demetris Bennett, the employees at the Subway sandwich shop; and Ms. Monique Saldano and Ms. Juliette Flowers, the employees at the Harrison One Hour Cleaners.
| ail. DISCUSSION

A. Errors Patent

A review of the record for errors patent reveals two errors committed during the sentencing of the defendant. On December 5, 1996, the trial court sentenced defendant to serve ninety-nine years at hard labor without benefit of probation, parole or suspension of sentence on each count. The sentences were to run concurrently. However, the trial court failed to state that the defendant would receive credit for time served. In addition, the trial court failed to rule on motion for new trial, which was filed on the same day as sentencing. A minute entry from May 14, 1999, indicates that the motion for new trial was filed on December 5, 1996. The trial court did not mention the motion for new trial at the multiple bill hearing held on July 29, 1997. After adjudicating the defendant a third offender, the trial court vacated the prior sentence imposed on count two and resentenced the defendant to serve ninety-nine years at hard labor without benefit of probation, parole or suspension of sentence. Again, the trial court failed to state that the defendant would receive credit for time served. The trial court denied the defendant’s motion for new trial on May 14, 1999. Unfortunately, the commitment orders are not in the appellate record, therefore is not possible to determine if the commitment orders *1197 provide that the defendant is to receive credit for time served.
La.C.Cr.P. article 880 provides that a “defendant shall receive credit toward his sentence for time spent in actual custody prior to the imposition of sentence.” Therefore, the defendant’s sentences should be amended to provide that the defendant is to receive credit for time served.
La.C.Cr.P. article 853 states that a “motion for new trial must be filed and disposed of before sentence.” Under C.Cr.P. article 873, “[I]f a motion for |innew trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled.” La.
In the present case, the record indicates that the defendant’s motion for new trial was filed on December 5, 1996. However, it is impossible to determine if the motion was filed before or after the sentencing hearing. If the motion for new trial was filed prior to sentencing, then the defendant’s sentences must be vacated and the case remanded for resentencing because the sentences were imposed before the motion was disposed of in violation of La.C.Cr.P. art. 873. See, State v. Randolph, 409 So.2d 554 (La.1981); State v. Moran, 584 So.2d 318 (La.App. 4 Cir.1991), writ denied, 585 So.2d 576 (La.1991). However, if the motion was filed after the trial court sentenced the defendant on December 5, 1996, then there is no error as to sentences on counts one, seven and eight. However, the failure of the trial court to consider the motion prior to the multiple bill hearing requires that the defendant’s sentence under the multiple bill be vacated and the matter remanded for resentencing.
B. Assignment of Error No. 1
In his first assignment of error, the defendant contends that the trial court erred when it denied his motions to suppress the identification. The defendant contends the photographic lineups were suggestive as the defendant’s photographs had a lighter background than the other photographs in the photographic lineups shown to the victims.
When reviewing an out-of-court identification procedure for its constitutionality and its admissibility in court, the appellate court must first make a determination of whether the police used an im-permissibly suggestive procedure in obtaining the out-of-court identification. Manson v. Brathwaite, 432 U.S. 98, 97 v. Prudholm, 446 So.2d 729 (La.1984); State v. Valentine, 570 So.2d 533 (La.App. 4th Cir.1990). If the court finds in the affirmative, the court must then decide, under all of the circumstances, if the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. Id. In Manson v. Brathwaite, the Supreme Court set forth a five-factor test to determine whether the identification was reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the witness’ prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. S.Ct. 2243, 53 L.Ed.2d 140 (1977); State
A photographic lineup may be unduly suggestive if the pictures display the defendant so singularly that the attention of the witness is focused on the defendant. State v. McPherson, 630 So.2d 935 (La.App. 4th Cir.1993). Strict identity of physical characteristics is not required; all that is necessary is a sufficient resemblance to reasonably test identification. State v. Savoy, 501 So.2d 819 (La.App. 4th Cir.1986), writ denied 502 So.2d 576 (La. 1987).
A review of the photographic lineups reveals that the backgrounds in the defendant’s photographs are not lighter than the other photographs used in the lineups. Thus, the photographs are not suggestive as contended by the defendant.
*1198 Further, even if the photographs were suggestive, the identifications made by the victims were reliable. All of the victims, except for Angela Ratcliff, who could not see the robber, positively identified the defendant at trial and in the photographic lineups as the perpetrator. In addition, each victim gave a description of the perpetrator which matched the defendant. Susan Trout, the victim in count one, testified that she watched the defendant as he entered the store and approached the counter. She was face to face with the defendant the entire time of the robbery. Shawn McClue, the victim in count two, stated that he observed the defendant enter the store and leave when a customer walked in. Mr. McClue testified that the defendant reentered the store and | ^approached the counter. The defendant faced Mr. McClue during the entire robbery. Sidney Anthony, an employee of the Subway Sandwich shop, the victim in count seven, testified that he observed the defendant enter the store and approach him. Demetris Bennett, Mr. Anthony’s co-employee, also saw the defendant enter the store. They were both within inches of the defendant when he pulled the gun and told them to give him the money in the register. • Monique Saldano and Juliette Flowers, employees at the Harrison One Hour Cleaners, the victim in count eight, testified that they could see the defendant’s face clearly during the entire robbery. All of the witnesses testified that the lighting was adequate in the various stores and that they could see the defendant’s face clearly. Each robbery took several minutes during which the defendant approached each victim and demanded the money in each one’s cash register. Every victim had sufficient time to obtain a good look at the defendant.
In addition, the photographic lineups occurred within six weeks of the earliest robbery. Susan Trout, who was robbed on February 19, 1994, and Shawn McClue, who was robbed on February 20, 1994, identified the defendant on April 5, 1994. Sidney Anthony and Demetris Bennett, who were robbed on March 23, 1994, identified the defendant on April 4, 1994. Monique Saldano, who was robbed on March 25, 1996, identified the defendant on March 30, 1994. Juliette Flowers, Monique’s co-worker, identified the defendant on April 7,1994.
| ^Under these circumstances, we find that the photographic lineups were not suggestive and that the identifications were reliable. This assignment is without merit.
C. Assignment of Error No. 2
The defendant argues that the sentences imposed by the trial court are unconstitutionally excessive. The trial court sentenced the defendant to serve ninety-nine years at hard labor without benefit of parole, probation or suspension of sentence on each of the four counts of armed robbery.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive or unusual punishment.”
A sentence within the statutory limit is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless imposition of pain and suffering.” State v. Caston, 477 So.2d 868 (La. App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so *1199 charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
In sentencing the defendant, the trial court stated:
| uBesides the number of counts that you were found guilty of, sir, the boldness of these incidents is — it’s like the Wild West. In the middle of the day time, walking into the Subway with a big gun. People sitting there ordering sandwiches, it don’t make no difference to you. Are you ready for sentencing?
i|! % % s«« ‡ ¡k
It’s the sentence of this Court to sentence the defendant to 99 years in the Department of Corrections without benefit of probation, parole or suspension of sentence on all counts. And what it means is life. You don’t deserve to live outside any more.
$ % :¡í ‡ ❖
I find it violent enough when you put a gun to somebody’s face. Ninety nine years in the Department of Corrections and I’m not changing that.
[[Image here]]
As to each count to run concurrently with each other.
The trial court noted that the defendant had prior convictions for attempted simple burglary and simple robbery. In the present case, the defendant had been convicted on four of eleven counts of armed robbery. He had previously been convicted of two counts of armed robbery arising out of the same bill of information. Thus, at the time of sentencing, the defendant had eight felony convictions.
In State v. Thomas, 463 So.2d 94 (La. App. 3rd Cir.1985), the appellate court affirmed sentences of ninety-nine years at hard labor on defendant’s two convictions for armed robbery. The court noted that the defendant had prior convictions for burglary, theft, simple criminal damage to property, and possession of stolen property. Likewise, this Court in State v. Robinson, 573 So.2d 1210 (La.App. 4th Cir.1991), ivrit denied, 580 So.2d 666 (La.1991), affirmed a ninety-nine year sentence on a defendant’s conviction for armed robbery. The court took into consideration the defendant’s lengthy juvenile record, his escape from a juvenile correctional facility and his lengthy adult criminal record. The Second Circuit also affirmed sentences of ninety-nine years on a defendant’s convictions for armed robbery. State v. DeWoody, 26,502 (La.App. 2nd Cir. 11/3/94), 645 So.2d 290. In DeWoody, the defendant was convicted of two counts of armed robbery, one count of aggravated escape and one count of second degree kidnapping. The defendant was sentenced to ninety-nine years at hard labor on each of the armed robbery counts, ten years at hard labor on the escape conviction and forty years at hard labor on the kidnapping charge. In affirming the sentences, the court considered the defendant’s prior convictions for simple burglary and armed robbery. In addition, the court noted that the defendant had committed the present offenses within two months of being released from the other convictions.
In the present case, the defendant was charged with eleven counts of armed robbery in the same bill of information. After two jury trials, the defendant was convicted of six counts of armed robbery and acquitted of one count. At the time of sentencing, he was awaiting trial on the other four counts. In addition, the defendant had prior convictions for attempted simple burglary and simple robbery.
Defendant’s criminal history and the robbery spree that he and his co-defendant engaged in support the sentences imposed by the trial court. The defendant participated in ten robberies within a two month period. He terrorized his victims by pointing a gun in their faces and threatening to kill them. The defendant was brazen enough to rob a sandwich shop during daylight hours, and then customers were in the store. The defendant and his cohort were stopped by a police officer when it appeared that they were casing a neighborhood. The defendant escaped from the officer while the officer was detaining his co-defendant. The defendant has shown *1200 no remorse for his actions. The defendant is within the class of the most egregious violators and should receive the maximum | , (¡sentence allowed. The sentences imposed by the trial court are not unconstitutionally excessive.
This assignment is without merit.
D. Assignment of Error No. 3
The defendant also argues that the trial court erred when it adjudicated him to be a third felony offender under the multiple bill. The multiple bill of information alleged that the defendant had prior convictions for simple robbery and attempted simple burglary. The defendant argues that the State failed to produce sufficient evidence to prove his prior conviction for attempted simple burglary.
Following the Louisiana Supreme Court decision in State v. Shelton, 621 So.2d 769 (La.1993), the legislature amended La. R.S. 15:529.1(D)(1)(b) to place the burden of challenging a predicate conviction in a multiple bill proceeding on the defendant. That subsection now provides, in pertinent part:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack a sentence.
The defendant did not file a written response to the habitual offender bill of | ^information complaining of any of the prior convictions or object orally at the multiple bill hearing to the State’s alleged lack of proof. Accordingly, his argument that the State did not produce sufficient proof of the prior conviction was not preserved for appeal. State v. Cossee, 95-2218 (La.App. 4th Cir.7/24/96), 678 So.2d 72.
This assignment of error is without merit.
III. CONCLUSION
Accordingly, defendant’s convictions as to these four counts and his adjudication as a third felony offender are affirmed. However, as it appears that the defendant’s motion for new trial was filed before sentencing but ruled upon after sentencing, defendant’s sentences on all four counts are vacated, and the matter is remanded for resentencing.

CONVICTIONS AFFIRMED; SENTENCES VACATED AND REMANDED FOR RESENTENCING.

. Clifford Jones, Washington’s co-defendant, was charged with two counts of armed robbery in violation of La. R.S. 14:64 and one count of a convicted felon in possession of a weapon in violation of La. R.S. 14:95.1. Jones pled not guilty to all counts at his arraignment on September 22, 1994. Jones was tried with Washington on counts ten and eleven (two counts of armed robbery) on March *1193 ll, 1997 and found guilty as charged. Jones was adjudicated a second felony offender and sentenced to fifty years at hard labor without benefit of probation, parole or suspension sentence. Their appeal of these convictions is pending in this court, 98-KA-1328.

. The defendant was tried on counts ten and eleven on March 5, 1997 and found guilty as charged. On June 9, 1997, the defendant was sentenced to serve ninety-nine years at hard labor without benefit of probation, parole or suspension of sentence on each count.

. The minute entry and docket master entry of July 29, 1997 state that the defendant was sentenced to life imprisonment under the multiple bill. However, the transcript of the hearing reveals that the trial court sentenced defendant to ninety-nine years at hard labor without benefit of probation, parole or suspension of sentence. When there is conflict between the minute entry and the transcript, the transcript controls. State v. Jones, 557 So.2d 352 (La.App. 4th Cir. 1990).