J^PLOTKIN, Judge.
Dejuan Jones was charged by bill of information on December 21, 1999, with armed robbery, a violation of La. R.S. 14:64[1] At his arraignment on January 4, 2000, he pleaded not guilty. Probable cause was found, and the motion to suppress the identification was denied on January 19, 2000. A twelve-member jury found him guilty as charged after trial on February 2, 2000. He was sentenced on April 18, 2000 to serve twenty years at hard labor without benefit of parole, probation, or suspension of sentence. The State filed and then withdrew a multiple offender bill charging the defendant as a second offender. The defendant’s motion for reconsideration of sentence was denied, and his motion for an appeal was granted.
At trial, Officer Salvator Caronna testified that just before midnight on October 31,1999, he investigated an armed robbery that occurred at about 11:30 p.m. on Milan Street. The officer transported the victim to St. Charles Avenue and Delachaise Street where two suspects were being held. Police had stopped the suspects in the victim’s vehicle at the intersection of Louisiana Avenue and Carondelet Street. The victim identified one man as the gunman, but had some ^difficulty identifying the other as the accomplice. Officer Car-onna left the scene in order to search for the gun, and during that time the victim named the second man, Dejuan Jones, as the accomplice. The victim described the gunman as wearing a navy blue bandanna over the lower portion of his face, a black shirt, black pants and light-colored tennis shoes during the holdup. He stated the accomplice was wearing a face-mask that *111 covered his forehead, eyes, and nose, a black long-sleeved sweat shirt, dark pants and dark tennis shoes. Jones’ clothing, which matched the victim’s description, was introduced into evidence. When Jones was arrested, he would not give his name to police. Officer Caronna testified that he looked at the police report prepared by Officer Nancy Overstreet, in which she wrote that the victim did not identify the defendant as the accomplice. Officer Caronna stated that Officer Over-street was incorrect. Under cross-examination, Officer Caronna said that he first looked at the police report several days after the incident when it had been approved and submitted.
Officer Overstreet testified that she answered the call for assistance from Officers Dowall Barrett and Damion Ranson who spotted a stolen car at the Corner Pocket Bar on the corner of Louisiana Avenue and Carondelet Street. Once there, she spoke with the victim who described his assailants. The victim could not provide a facial description of the accomplice, but did provide Officer Over-street with a clothing description. The victim noticed that the accomplice wore dark-colored tennis shoes with an orange check and white soles. Officer Overstreet was not in hearing range when the victim identified the two men. She was near her car getting supplies for the report. However, she stated that she saw the victim identify each of the men as his assailants. She explained the discrepancy in the lapolice report by noting that initially the victim could not give any facial description of the accomplice.
Officer Dowall Barrett testified that he heard an announcement on the police radio concerning an armed robbery of a green Land Rover with a Tennessee license plate. Twenty minutes later, Officer Barrett observed the ear emerging from a fast food restaurant near Louisiana Avenue and Carondelet Street, about a mile, from the site of the robbery. While the car was stuck in traffic, the officer and his partner approached it on foot. Two men were inside the vehicle, with Dejuan Jones in the driver’s seat. When the victim arrived, he noted that Jones was wearing an orange shirt, and at the time of the robbery, the accomplice had on a black shirt. However, after the officer had Jones remove the orange shirt, they observed that Jones was wearing a black shirt underneath the orange one. The victim identified Jones as the accomplice in the robbery.
Stephen Burns testified that he was parking his 1998 green Land Rover at his home on October 31, 1999, when two men approached him. One man had a gun, which he pointed at Burns’ temple, while demanding Burns’ car keys. Burns held the keys out to the gunman. The gunman was wearing a bandana. The second man was wearing a black shirt, black pants and black high-top tennis shoes with an orange circle near the sole. Burns could see only part of the accomplice’s face during the robbery, but as he left, the accomplice removed a mask, and Burns could see the entire face as he drove away. Burns called the police, and within four minutes two officers arrived and took down a description of the car and the robbers. Less than thirty minutes later, the officers transported Burns to St. Charles Avenue to view two suspects. Burns identified both of the men. The gunman was not wearing the bandanna, but it was found in his pocket. The 1 ¿accomplice had on an orange football jersey, a different shirt from that worn during the robbery; however, underneath the orange jersey, the accomplice was wearing the black knit top that Burns remembered. Burns admitted that the first time he mentioned that the accomplice was wearing a mask was about six weeks, prior to trial; he had overlooked that fact when describing the situation to the police on the night that it occurred.
In a single assignment of error, defendant claims his sentence is excessive.
The defendant was convicted of a violation of La. R.S. 14:64, which provides *112 for a sentence of imprisonment at hard labor for not less than ten years and not more than ninety-nine years, without benefit of probation, parole or suspension of sentence. The defendant was sentenced to twenty years at hard labor without benefits, a term twice the minimum and about twenty per cent of the maximum.
Article I, Section 20 of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence within the statutory limit is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless imposition of pain and suffering.” State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719, 720 (La.1983); State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982).
If adequate compliance with article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum |Bsentences should be reserved for the most egregious violators of the offense so charged. Quebedeaux, 424 So.2d at 1014; State v. Guajardo, 428 So.2d 468, 473 (La.1983).
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court, held:
On appellate review of sentence, the only relevant question is “ ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ” For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. I, § 20, i.e., when it imposes “punishment disproportionate to the offense.” In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, a remand for resentencing is appropriate only when “there appear[s] to be a substantial possibility that the defendant’s complaints of an excessive sentence ha[ve] merit.”
Id. (citations omitted).
The defendant complains that the trial court did not consider any mitigating factors in sentencing him and that the gunman received a lesser sentence than he did. In his reasons for judgment, the judge referred to the pre-senteneing investigatory report and commented:
Mr. Jones has a prior record as a juvenile in 1995 for a concealed weapon. He has another arrest in 1995 ... that’s an obliterated serial number, there was a conviction for that concealed weapon charge in 1995. In 1996 he has a simple burglary conviction out of St. Bernard Parish, [for] which he received a suspended sentence and was placed on probation.
In addition, he has other arrests out of New Orleans for possession of a stolen auto in June of 1996. Also in December of 1996, ... possession of a stolen auto. Possession of a stolen auto in August of 1997, an arrest for that charge. In August of 1998, unauthorized use of a moveable arrest and then the instant arrest, armed robbery, October of 1999.
| ((While the defendant is right that the trial court referred only to his criminal history at sentencing, perusal of the pre-sentencing investigatory report reveals no mitigating factors. The defendant at age twenty-one has no work history; he did not complete high school, and the pre-sentencing report contains no redeeming facts.
*113 The defendant argues that the trial court should have considered the fact that he did not hold the gun or even say anything threatening to the victim. However, we note that Dejuan Jones directly aided in the commission of the crime. When the other robber put the gun to Burns’s temple and got the car keys from him, Jones took the keys, jumped in the car, and drove it away. He was still at the wheel when the police apprehended the men. This court held that a defendant was a principal in a very similar armed robbery where one man held a gun on the victim while the other silent robber took the keys and drove off in the car. State v. Richardson, 96-2598 (La.App.12/17/97), 703 So.2d 1371, writ denied, 98-0228 (La.9/25/98), 726 So.2d 7.[2]
The defendant also complains that the gunman was sentenced to a lesser term. At William Powell’s sentencing the trial court noted that Powell was a seventeen-year-old first offender who pleaded guilty to armed robbery. In contrast, Jones was twenty-one-years-old at sentencing, and had a significant criminal history, including a juvenile offense in 1995, three arrests, six charges and one conviction in 1996, two arrests concerning stolen cars in 1997, and an arrest in 1998 concerning a stolen car prior to the arrest in the instant case. Obviously, the |7trial court found that Jones has shown a continual pattern of criminal conduct and a habitual disrespect for the law meriting twenty years imprisonment.
The next inquiry is whether the sentence is excessive in light of sentences imposed by other courts in similar circumstances. In State v. Davis, 596 So.2d 358 (La.App. 4 Cir.1992), writ denied, 604 So.2d 965 (La.1992), this court affirmed three consecutive twenty-year sentences for armed robberies imposed on a youthful offender with six arrests for non-violent crimes as a juvenile and one prior felony conviction as an adult for possession of stolen property. In State v. Dunns, 441 So.2d 745 (La.1983), the Louisiana Supreme Court upheld a forty-year sentence for armed robbery imposed on a first-felony offender who had been previously convicted of carrying a concealed weapon, finding that it was unable to say that the trial court had abused its discretion. The twenty-year sentence imposed in the instant case is not disproportionate to sentences imposed in other armed robbery cases.
There is no merit to this assignment of error.
Accordingly, for reasons stated above, the defendant’s conviction and sentence are affirmed.

AFFIRMED

. Jones was charged with William Powell, who pleaded guilty to armed robbery and was sentenced to serve fifteen years at hard labor without benefits.

. In Richardson, the defendant was convicted of attempted armed robbery and sentenced to thirty years without benefits.