NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-713
c/w 12-714

STATE OF LOUISIANA

VERSUS

DANNY PAUL BURGE

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NOS. 81718 AND 81719, DIV. C
HONORABLE JAMES R. MITCHELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED.**

**John K. Anderson, Assistant District Attorney**
**Thirtieth Judicial District, Parish of Vernon**
**P. O. Box 1188**
**Leesville, LA 71446**
**COUNSEL FOR THE STATE OF LOUISIANA**

**Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Danny Paul Burge**

**PAINTER, Judge.**

Defendant, Danny Paul Burge, appeals the sentences imposed after he pled guilty to one count of sexual battery and one count of molestation of a juvenile. We affirm his sentences.

## FACTS AND PROCEDURAL HISTORY

The charges against Defendant were based on activity that occurred in Evans, Louisiana, in Vernon Parish, in 2007. However, similar events also occurred between Defendant and the victim, K.K.[1], in Calcasieu and Beauregard Parishes. Defendant, who was sixty-six years old at the time of the offenses, was retired from the Beauregard Parish Police Jury. K.K. was twelve and thirteen when Defendant committed these offenses.

The police report filed in the record as part of the State's discovery response shows that Defendant was a deacon at the church that both he and K.K. attended. During the summer of 2007, when K.K. was about to enter the eighth grade, Defendant approached K.K.'s parents and expressed an interest in coaching her for softball. Defendant and K.K. began to spend time together, and K.K. considered them to be "friends." Ultimately, they saw each other every day.

Defendant and K.K. rode together in Defendant's vehicle on a mission trip to Gallup, New Mexico. Defendant began to hold K.K.'s hand when they were in his truck. This progressed to Defendant kissing, touching, and rubbing her breasts, buttocks, and vagina, inside and outside her clothing. Defendant "touched her in this manner . . . 'a lot – between 50 and 100 times.'" The offenses occurred while they were in Defendant's truck, at his home, and even at the church. K.K. told others that they "did everything but have sex." Defendant told K.K. that he loved her.

When Defendant's wife became suspicious about his relationship with K.K. and separated from him, she wrote a letter and showed it to K.K.'s mother. K.K. said that

_____

[1]Initials are used to protect the identity of the victim pursuant to La.R.S. 46:1844(W).

Defendant talked to her parents about his wife leaving him and told them that he loved her. Defendant was not allowed to talk to K.K. after that, but they continued to attend the same church.

In April 2008, K.K.'s mother caught Defendant and K.K. together at the church. Even though the family changed its church membership at that time, Defendant continued to have contact with K.K. In March 2009, K.K.'s family obtained a restraining order against Defendant. At a hearing concerning the restraining order, the hearing officer asked Defendant "if he took an interest in all young girls, to which he replied, 'yes, I do, but mainly [K.K.].'" Defendant did not deny any of the allegations made against him at that hearing.

K.K. went through a period of depression and anger and cried "all the time" during the school year. During the second week of April, 2010, Defendant told K.K. that he loved her, that he still wanted to be with her, and that "when she was 18 that they could be together." On May 3, 2010, a friend's mother took K.K. to the hospital because of K.K.'s suicidal thoughts that had progressively worsened.

K.K. told a friend that she felt guilty because she did not stop Defendant, who told her "this would ruin her reputation if anyone found out." The record includes a letter that K.K. wrote describing her feelings. The letter indicates that K.K. believed that she was in love with Defendant, blamed herself for allowing these things to happen, and questioned both her spirituality and value to God. In a statement K.K. gave to the Beauregard Parish Sheriff's Office on May 6, 2010, while she was in the hospital, K.K. said that she had been in counseling for about a month. In another statement given June 18, 2010, K.K. explained that she felt guilty about what took place and that she felt bad about not stopping it. She indicated that she saw Defendant as a father figure who "could do everything . . . go play and work out and all . . . [while] all [her dad] can do is work." K.K. was confused when Defendant changed their relationship from being a grandfatherly figure to being a boyfriend figure.

Defendant was arrested in Beauregard Parish on June 3, 2010, on charges of sexual battery and molestation of a juvenile. He was later arrested in Calcasieu Parish on twenty-five counts of sexual battery and twenty-five counts of molestation of a juvenile based on the locations of the numerous incidents. Authorities forwarded their investigative reports to the Vernon Parish Sheriff's Office, and the charges involved in this appeal resulted.

Defendant was charged by bill of information 2011 with five counts of sexual battery of a child under the age of fifteen who was at least three years younger than him, a violation of La.R.S. 14:43.1(A)(2). He was also charged by a separate bill of information with five counts of molestation of a juvenile, a violation of La.R.S. 14:81.2(A)(1). The bills alleged that the acts occurred from May to September, 2007. Defendant originally pled not guilty to all charges on September 6, 2011. On February 3, 2012, he entered pleas of guilty to one count of sexual battery and one count of molestation of a juvenile. The trial court records of both cases, with the exception of one page, are identical. The trial court granted the State's motion to consolidate the cases for the purpose of the pleas and sentencing. However, the records show that the trial court treated the cases as if they were consolidated from the point of arraignment.

At the plea hearing, defense counsel and counsel for the State agreed to recommend sentences of eight years on the sexual battery charge and ten years with two years suspended on the molestation charge, with the sentences to run concurrently. There was "no agreement or no recommendation as to whether or not [the two sentences] would run concurrent [sic] or consecutive [sic] with any other charge" that Defendant would serve on other charges involving the victim in Beauregard and Calcasieu Parishes. The parties asked the trial court to conduct a presentencing investigation (PSI) to determine how the sentences would run. Defendant was already serving an eight-year sentence on convictions based on the

same charges involving the same victim in Beauregard Parish. Charges in Calcasieu Parish, also involving the same victim, were pending at the time of the plea hearing. The remaining Vernon Parish charges were dismissed as part of the plea agreement, and the trial court ordered a PSI.

The trial court deviated from the recommendation and sentenced Defendant to ten years at hard labor without benefit of probation, parole, or suspension of sentence on each charge and ordered him to pay a one thousand dollar fine on the molestation charge. The trial court ordered that sentences run concurrently with each other but consecutively to the other sentences Defendant might serve on these charges in the other parishes. Defendant objected to the trial court's deviation from the recommendation and the consecutive nature of the sentences. He filed a motion to reconsider his sentences, but the trial court denied that motion. Defendant now appeals his sentences alleging that the trial court failed to sufficiently consider the factors set forth in La.Code Crim.P. art. 894.1 and that the sentences were constitutionally excessive. For the following reasons, we affirm both sentences.

**DISCUSSION**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After careful review of the record, we find that there are no errors patent.

Defendant argues that the trial court failed to sufficiently or correctly consider the factors of La.Code Crim.P. art. 894.1, resulting in the imposition of constitutionally excessive sentences. Further, he contends that the trial court erred in ordering the sentences to run consecutively with sentences imposed in other parishes. Specifically, Defendant asserts that the trial court failed to properly consider mitigating factors. He also claims that the trial court: (1) had no basis for determining that there was an undue risk that he would commit another crime during a

4

period of a suspended sentence; (2) failed to tailor the sentences specifically to him; (3) lacked justification for the imposition of consecutive sentences; and (4) imposed disproportionately excessive sentences.

Defendant's motion to reconsider his sentences claimed that "the sentence imposed is grossly disproportionate to the seriousness of the offense, makes no measurable contribution to acceptable goals of punishment, and is nothing more that [sic] the purposeless imposition of pain and suffering." He also claimed that the sentences represented a manifest abuse of discretion and that "[t]he trial court failed to adequately consider applicable mitigating circumstances in determining the appropriate sentence to be imposed."

Louisiana Code of Criminal Procedure Article 881.1(E) provides:

[f]ailure . . . to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

In *State v. Granger*, 08-1480, p. 3 (La.App. 3 Cir. 6/3/09), 11 So.3d 658, 660, the defendant filed a motion to reconsider in the trial court that "did not specifically raise the error of consecutive sentences" that he alleged on appeal. This court found that its review of the defendant's sentence was limited to a bare claim of excessiveness. However, the court then noted:

The defendant in this case committed separate crimes, with separate victims, locations, and dates. Pursuant to La.Code Crim. P. art. 883, the sentence was to be served consecutively, *unless* the court expressly directed that it be served concurrently. Accordingly, the trial court did not err in ordering that the six sentences run consecutively.

*Id.* at 663. Thus, even though this court limited its review of the sentences, it still addressed the consecutive nature of the sentences.

The defendant in *State v. Wood*, 08-1511 (La.App. 3 Cir. 6/3/09), 11 So.3d 701, did not file a motion to reconsider but complained on appeal that his sentences were grossly disproportionate to his crimes and represented needless pain and suffering.

5

Further, he argued that the consecutive nature of his sentences added to the needless imposition of pain and suffering. This court, in the interest of justice, reviewed the "sentences for constitutional excessiveness, including their consecutive nature." *Id.*at 712. Thus, this court considered the consecutive nature of the sentences to the extent that they may have been constitutionally excessive.

In *State v. Prejean*, 10-480 (La.App. 3 Cir. 11/3/10), 50 So.3d 249, the defendant sought review of his claim that the trial court failed to consider the factors set out in La.Code Crim.P. art. 894.1. This court declined to review the claim because that specific argument was not set forth in the defendant's motion to reconsider his sentence.

Here, Defendant's motion for reconsideration did not specifically complain of the consecutive nature of his sentences or that the sentences were not specifically tailored to him. He did not argue that the trial court erred by finding that there was an undue risk that Defendant would commit another crime during a period of a suspended sentence or that the trial court failed to consider the factors of La.Code Crim.P. art. 894.1. Because we find that *Granger*, 11 So.3d 658, *Wood*, 11 So.3d 701, and *Prejean*, 50 So.3d 249, prohibit consideration of these arguments on appeal except to the extent necessary to evaluate the constitutionality of the sentences, we limit our review to a bare claim of excessiveness to include a determination of whether the consecutive nature of the sentences leads to a constitutional violation. However, this court will consider Defendant's claims that the trial court failed to properly consider mitigating factors and imposed disproportionately excessive sentences along with a bare claim of excessiveness review that includes a look at the consecutive nature of the sentences.

This court has previously discussed the standard for reviewing excessive sentence claims:

> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

Even though a penalty falls within the statutory sentencing range, it may still be unconstitutionally excessive:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted). "[M]aximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender." *State v. Quebedeaux*, 424 So.2d 1009, 1014 (La.1982) (citing *State v. Jones*, 398 So.2d 1049 (La.1981)). "The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." La.Code Crim.P. art. 881.4(D).

In *State v. Fontenot*, 09-624 (La.App. 3 Cir. 12/9/09), 25 So.3d 225, the defendant pled guilty to three counts of sexual battery of a seven-year-old girl and was sentenced to ten years at hard labor on each count, to run concurrently. As part of the

plea agreement, three additional charges were dismissed. A psychologist "did not believe that the Defendant was a predator for whom there is no treatment, but rather, one who could be successfully rehabilitated." *Id.* at 229. The trial court noted, however:

> "[I]t doesn't matter to [the victim], it doesn't make a difference to her whether [the Defendant is] on the far end of the scale of a sexual predator or whether [he is] an opportunist. She was molested."

*Id.* This court noted that "the trial court considered the victim's age, vulnerability, and relation to the Defendant as aggravating factors" and found that "the totality of these circumstances justifies the imposition of the maximum sentence." *Id.* at 230-31.

The defendant in *State v. Pierre*, 02-277 (La.App. 3 Cir. 6/11/03), 854 So.2d 945, *writ denied*, 03-2042 (La.1/16/04), 864 So.2d 626, was given a mandatory life sentence for the second degree murder of her son and sentenced to ten years at hard labor for the attempted second degree murder of her husband. She raised the issue of the consecutive nature of the sentences in the trial court but filed no motion to reconsider. This court found that "even though the shootings of her husband and son arose out of the same act, it is not mandatory that the sentences be served concurrently." *Id.* at 954. This court further found that the trial court did not err in expressly directing consecutive sentences in accordance with La.Code Crim.P. art. 883, regardless of whether the shootings were separate and distinct acts or close enough in time and space to constitute the same act.

In *Wood*, 11 So.3d 701, this court cited *Pierre* and likewise concluded that the trial court properly imposed consecutive sentences. Likewise, in *Granger*, 11 So.3d 658, this court affirmed consecutive sentences where the trial court expressly so directed in a case where the defendant committed separate crimes with separate victims, locations, and dates.

Here, at the time of the offenses in Defendant's case in 2007, the penalty for sexual battery was imprisonment for up to ten years, with or without hard labor,

8

without benefit of parole, probation, or suspension of sentence. La.R.S. 14:43.1(C)(1). However, where the victim was below the age of thirteen and the offender was seventeen or older, the penalty increased to imprisonment from twenty-five years to life at hard labor, without benefit of parole, probation, or suspension of sentence. La.R.S. 14:43.1(C)(2). The record indicates that Defendant first began helping K.K. practice softball during Easter weekend of March 2007, when K.K. was twelve years old, and still in the seventh grade.[2] The incidents of hand-holding began then, and Defendant began kissing K.K. and touching her a few days later. Thus, the record contains evidence of other acts of sexual battery and/or molestation occurring at a time that would have subjected Defendant to a much more severe sentence. Nevertheless, the State filed no charges based on conduct while K.K. was below thirteen years of age. Defendant received the maximum sentence of ten years at hard labor without benefit of parole, probation, or suspension of sentence.

The penalty for molestation of a juvenile in June, 2007, was imprisonment from one to ten years, with or without hard labor, and/or a fine of up to five thousand dollars. La.R.S. 14:81.2. Defendant received the maximum prison time and a one thousand dollar fine.

Defendant received a significant benefit from his guilty plea. The State dismissed four charges of sexual battery and four charges of molestation of a juvenile. Each of these eight charges carried a possible ten-year sentence. The molestation charges also subjected Defendant to fines of up to twenty thousand dollars. Additionally, the trial court ordered his sentences to run concurrently with each other even though they will run consecutively to other sentences resulting from similar acts with the same victim in other parishes. This gave Defendant further benefit from his plea bargain. Again, the State did not seek charges for crimes occurring before K.K.

---

[2]K.K.'s birthdate is April 15, 1994.

was thirteen, which would have subjected Defendant to a minimum twenty-five year sentence.

Defendant argues that his age, education, family, and employment history, along with health problems, and the fact that he took responsibility for what he did to K.K., "are all factors in mitigation of maximum sentences." The trial court considered these factors at sentencing, although not necessarily as mitigating factors, and found no grounds to justify Defendant's conduct. The trial court noted the fifty-eight-year age difference between Defendant and his victim. The trial court reviewed Defendant's personal information and found that Defendant was "definitely in need of correctional treatment." If these particular factors provide any influence in this case, they serve to aggravate, not mitigate, the circumstances of Defendant's crimes. The facts that Defendant was almost seventy years old at the time of these offenses, had been married a long time, had a high school education, and had been in the workplace a long time only magnify the egregious nature of his crimes against this juvenile. We find that the record shows an adequate basis for imposing the maximum sentences in this case.

The trial court specifically directed Defendant's two maximum sentences to run consecutively to his sentences on convictions in other parishes as required by La.Code Crim.P. art. 883. While those convictions involved the same victim, they involved separate and distinct acts at different times and places than the acts at issue in this appeal. Based on *Granger*, 11 So.3d 658, *Wood*, 11 So.3d 701, and *Pierre*, 854 So.2d 945, we find that the trial court's direction for these sentences to run consecutively to Defendant's sentences in other parishes does not lead to constitutional excessiveness.

The facts herein show Defendant's egregious and blameworthy behavior. Defendant touched K.K. inappropriately more than fifty times while they were together at the "life center" at their church. He convinced this child that she was in love with him. He violated and exploited a position of trust. K.K. blamed herself, not

the adult in this situation, for allowing these things to happen. None of the facts argued by Defendant serve to mitigate the despicable acts that inflicted unspeakable harm on this young girl. Apparently, the trial court considered Defendant to be a "worst kind of offender." *Quebodeaux*, 424 So.2d at 1014. The trial court noted the gravity of the crimes, the harm done to K.K., and the potential for Defendant's rehabilitation. Further, Defendant received significant benefit from his plea bargain by the dismissal of eight charges that could have resulted in a possible additional eighty years of imprisonment.

The record in this case supports the sentences imposed, and it does not show that the trial court abused its discretion in imposing the maximum sentences. Accordingly, we affirm Defendant's sentences.

## DECREE

For all of the foregoing reasons, Defendant's sentences are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.