STATE OF LOUISIANA     *     NO. 2024-KA-0430

VERSUS     *

    COURT OF APPEAL

STEVEN GRANT     *

    FOURTH CIRCUIT

    *

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 553-336, SECTION "K"
Judge Marcus DeLarge
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Nakisha Ervin-Knott)

Jason Rogers Williams
District Attorney
Patricia Amos
Assistant District Attorney
ORLEANS PARISH
619 South White Street
New Orleans, Louisiana 70119

       COUNSEL FOR STATE/APPELLEE

Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

       COUNSEL FOR DEFENDANT/APPELLANT

                                  **AFFIRMED**
                              **November 20, 2024**

Defendant, Steven Grant ("Defendant"), appeals his thirty-five-year sentence for the conviction of manslaughter and his ten-year sentence for the conviction of aggravated battery. For the following reasons, we affirm Defendant's sentences.

## STATEMENT OF FACTS

This case arises from a domestic incident. During the early morning hours of November 4, 2021, Defendant went to visit K.O.[1] at her home. Three of K.O.'s minor children were present, including nine-year-old N.O. While there, Defendant and K.O. engaged in a physical altercation. Hearing her mother in distress, N.O. grabbed a knife and went to aid her mother. In the process, N.O. stabbed the Defendant. By the end of the altercation, all parties had received multiple stab wounds. N.O. fled the house, and Defendant, after hearing a neighbor call the police, left the scene of the incident. Responding officers found N.O. covered in blood and recovered K.O.'s bloody body from a neighbor's porch. The emergency personnel transported K.O. and N.O. to University Medical Center ("UMC") for treatment. Unfortunately, K.O. succumbed to her wounds and was pronounced dead on arrival. Although N.O. recovered, she sustained permanent injuries.

---

[1] In accordance with La. R.S. 46:1844(W)(1)(a), we will refer to Defendant's victims by their initials.

1

## PROCEDURAL HISTORY

On February 17, 2022, a grand jury indicted Defendant with one count of attempted first degree rape of K.O. in violation of La. R.S. 14:27 and 14:42, one count of second degree murder of K.O. in violation of La. R.S. 14:30.1, and one count of attempted second degree murder of N.O. in violation of La. R.S. 14:27 and 14:30.1. The matter proceeded to a five-day jury trial on March 8, 2023. At the conclusion of the trial, the jury returned guilty verdicts for the lesser offense of manslaughter of K.O. and the lesser offense of aggravated battery against N.O.[2]

The trial court held a sentencing hearing on June 23, 2023. Ultimately, the trial court sentenced Defendant to thirty-five years at hard labor for the manslaughter of K.O. and ten years at hard labor for the aggravated battery on N.O. The trial court ordered that the sentences run concurrently and Defendant receive credit for time served. This appeal followed.

## ERRORS PATENT

Appellate courts have a duty to review the appellate record for any errors patent.[3] La. C.Cr.P. art. 920; *see also State v. Taylor*, 2018-1039, pp. 2-3 (La. App. 4 Cir. 6/17/20), 302 So. 3d 145, 146. A review of this record does not reveal any errors patent.

## ASSIGNMENT OF ERROR

Defendant's sole assignment of error is that the trial court erred in imposing constitutionally excessive maximum and near maximum sentences.

---

[2] The jury returned a verdict of not guilty for the attempted first degree rape of K.O.

[3] An error patent is one "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. C.Cr.P. art. 920(2).

**DISCUSSION**

Article I, § 20 of the Louisiana Constitution prohibits the imposition of excessive sentences, and a sentence may still be excessive even if it falls within a crime's statutory range. *State v. Bertrand*, 2004-1496, p. 6 (La. App. 4 Cir. 12/15/04), 891 So. 2d 752, 757 (citations omitted). "A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime." *State v. Mitchell*, 2021-0488, p. 5 (La. App. 4 Cir. 12/15/21), 334 So. 3d 449, 453 (citations omitted). A sentence is grossly disproportionate if it shocks the sense of justice when considered in light of the harm done to society by the underlying crime. *Id*. at p. 6, 334 So. 3d at 453 (quoting *State v. Vargas-Alcerreca*, 2012-1070, p. 25 (La. App. 4 Cir. 10/2/13), 126 So. 3d 569, 583).

When reviewing a sentence for excessiveness, the appellate court must first determine whether the trial court complied with the sentencing guidelines under La. C.Cr.P. art. 894.1 and then whether the sentence is supported by the facts in the record. *See State v. Toney*, 2023-0591, p. 9 (La. App. 4 Cir. 4/17/24), 390 So. 3d 812, 820 (citation omitted); *see also Vargas-Alcerreca*, 2012-1070, p. 25, 126 So. 3d at 583 (citations omitted). Louisiana Code of Criminal Procedure article 894.1 lists a number of factors for a trial judge to consider when determining the nature and length of a sentence. *State v. Lanclos*, 419 So. 2d 475, 477-78 (La. 1982). The purpose of the article is for the trial judge to provide a factual basis for the sentence imposed, not for the trial judge to recite every factor. *Id* at 478. If the trial judge has adequately complied with the sentencing guidelines, the appellate court must determine whether the sentence is too severe in light of the particular

3

defendant and circumstances of the case. *E.g.*, *State v. Ambeau*, 2008-1191, p. 10 (La. App. 4 Cir. 2/11/09), 6 So. 3d 215, 222 (citing *State v. Quebedeaux*, 424 So. 2d 1009 (La. 1982)).

In this case, the trial court sentenced Defendant to a total of thirty-five years—thirty-five years for the manslaughter conviction and ten years for the aggravated battery conviction, both of which run concurrently. The crime of manslaughter carries a maximum sentence of forty years, La. R.S. 14:31(B), whereas aggravated battery carries a maximum of ten years, which Defendant received. La. R.S. 14:34(B).

### *Evidence adduced at trial*

During the trial, the jury heard from multiple witnesses, including the investigating law enforcement officers, the health care professionals involved in the treatment of the parties, the chaplain who spoke with the Defendant while he was in the hospital, N.O., and Defendant himself.

Defendant and the other witnesses presented conflicting testimony regarding the events that transpired. For instance, Chaplain Lamone Young, the lead chaplain for the emergency department at UMC, testified that Defendant, after changing his story several times[4], admitted that he had sought out K.O. that night to have sex and had gotten into a "tussle" after she denied him sex. However, Defendant denied having a sexual relationship with K.O. and claimed that the two began to fight after she told him that his girlfriend had cheated on him.

---

[4] Chaplain Young testified that Defendant stated he had been stabbed by two kids, then by a man, and finally, by K.O. during a fight. Dr. Leslie Palmerlee, the emergency medicine physician who treated Defendant at UMC, confirmed that Defendant's medical record contained a notation that Defendant had been stabbed by a person unknown to him.

In his case-in-chief, Defendant maintained he only acted in self-defense when K.O. swung at him with a knife after he made a derogatory comment towards her. He denied having stabbed N.O. However, N.O. testified that Defendant chased her into her bedroom and stabbed her through her bedsheets as she tried to hide under the covers. Dr. Rebecca Hutchings, who treated N.O. after she was transferred to Children's Hospital, confirmed that N.O. sustained multiple stab wounds to her face, shoulder, chest, back, and hands. Yet, Defendant maintained he did not stab N.O. and that "she could have stabbed herself."

Notably, during the trial, the jury learned that this was not Defendant's first attempted murder charge. Detective Donald Sharp testified that he investigated Defendant in May 2018 for the attempted second degree murder of his girlfriend after he had shot her in the knee in front of her children, nieces, and nephews. Instead of going to trial for that crime, Defendant pled guilty to lesser charges of aggravated battery and domestic abuse battery. When questioned about the incident on direct, Defendant admitted he pulled a gun out during the argument but insisted he never meant to hurt anybody, especially because his children were in the house with his girlfriend. At the urging of his mother, Defendant turned himself in to the police and spent a total of ten months in jail after pleading guilty to the lesser charges. Defendant testified that he pled guilty to the lesser charges because he knew he was guilty; however, on cross-examination, Defendant admitted he knew the initial charge—attempted second degree murder—carried a minimum sentence of ten years in prison.[5]

---

[5] Chaplain Lamone Young testified that Defendant had confessed while at UMC that he did not want to go back to jail and hoped he could get a plea deal for anything under fifteen years in relation to the November 4, 2021 incident.

### *The sentencing hearing*

At the sentencing hearing, the trial court heard from K.O.'s two grandmothers. Both women gave statements regarding how N.O. and her siblings were traumatized by the crime and the loss of their mother. Prior to November 4, 2021, K.O.'s minor children lived together as a family with their mother. Since their mother's murder, K.O.'s children have been separated and live with different relatives across the country. Both grandmothers confirmed the children are severely traumatized by the crime and cannot sleep at night. Furthermore, N.O. is unable to close her eyes due to losing the nerves on the side of her face. N.O.'s caretaker confirmed that N.O. had recently undergone surgery to lessen her scarring. Despite the procedure, she will still need more surgery in the future to try to restore the nerves in her face. Both grandmothers expressed a strong desire for Defendant to receive a harsh sentence for what they believed to be the murder of their granddaughter and attempted murder of N.O.

Defendant also gave a statement at the hearing. Although Defendant apologized to K.O.'s family, he did not take responsibility for his actions that night. Defendant continuously described his actions as "a bad situation" and stated that he did not know what to do in that "type" of situation. At one point, Defendant stated, "I didn't take K.O.'s life, but a life was lost." Not once did Defendant mention the harm he inflicted on N.O.

At the conclusion of the hearing, the trial judge stated his reasons for sentencing. While he acknowledged that the Defendant had a hard upbringing and expressed remorse for his actions, the judge also noted that the trial had been "reminiscent of a horror movie" and that it was the most heinous crime he had seen in his years of practice. He recognized that K.O. lost her life and that N.O. was

traumatized. He also expressed concern that this crime was an escalation from Defendant's prior actions, stating, "He shot at a lady one time. Killed a lady the next. What do you think is going to happen next time?" Although the trial judge did not list every factor considered under the sentencing guidelines, we find that his reasoning demonstrates that he considered the circumstances surrounding the Defendant and his crime.

***Whether the guidelines and the record support the sentence imposed***

Outside of the trial judge's reasons, we further find that the record of this case supports the lengthy sentences imposed. Louisiana Code of Criminal Procedure article 894.1(B) lists a number of aggravating factors to be considered by courts imposing a sentence. This includes the following—whether the crime manifested deliberate cruelty to the victim; whether the perpetrator knew that the victim was particularly vulnerable or incapable of resistance due to extreme youth; whether the crime permanently injured the victim or her family; whether the defendant was involved in similar offenses in the past; and whether the defendant used a dangerous weapon during the commission of the crime. *Id.* We find all the above factors are established in the record.

Defendant's actions manifested deliberate cruelty and resulted in permanent loss to the victims. K.O. lost her life. N.O. and her siblings lost their mother as well as their prior life together. N.O. sustained a significant injury to her face that still requires medical attention years later. She cannot close her eyes, has nerve damage on the side of her face, and, despite already undergoing surgery, will need additional surgery in the future. As noted by the trial judge, Defendant had been involved in a similar crime in the past wherein he shot his girlfriend during an argument while her children were present. The circumstances of that past crime

7

eerily mirror the one before us—a fight, the use of a dangerous weapon, and an attempt on a woman's life in the presence of her children. Taking all of this into consideration, we find that the trial court adequately complied with the sentencing guidelines and the record supports Defendant's sentences.

***Whether the sentence is too severe in light of the circumstances surrounding the Defendant and his crime.***

Finding adequate compliance with the guidelines, we now must determine whether the Defendant's sentences are too severe in light of the circumstances. Our jurisprudence holds that maximum sentences are typically reserved for the most egregious offenders of the crime charged. *E.g.*, *Toney*, 2023-0591, p. 9, 390 So. 3d at 820 (citations omitted); *see also Quebedeaux*, 424 So. 2d at 1014. Stabbing a women multiple times in front of her children, and then stabbing a child multiple times in the face and body after that child attempted to defend her mother, are egregious actions. Most shocking, N.O. was only nine years old when she witnessed the Defendant attack and murder her mother. N.O. was only nine years old when she was forced to defend her mother from Defendant. N.O. was only nine years old when the Defendant stabbed her multiple times, inflicting severe, permanent injuries. After considering the record as a whole, we do not find that the sentences imposed shock a sense of justice or are too severe in light of the harm inflicted by the Defendant.

## DECREE

For the foregoing reasons, we affirm Defendant's sentences.

**AFFIRMED**